### ALONZO BLACKLOCK V. THE STATE.

No. 4492. Decided June 20, 1917.

**1.—Manslaughter—Self-defense—Charge of Court—Apparent Danger.**

Where, upon trial of murder and conviction of manslaughter, the testimony raised the issue of apparent danger, the charge on self-defense should not have been restricted as to the amount of force defendant was authorized to use, as the law with reference to resort to other means or no more force than was necessary does not apply to self-defense actual or apparent, nor was he required to retreat, etc., and where the court charged that defendant could not use any more force than was necessary, etc., the same was reversible error.

**2.—Same—Practice on Appeal.**

The question of continuance and the manner of summoning the jury will not arise on another trial as presented in this case, and need not, therefore, be considered.

Appeal from the District Court of Rusk. Tried below before the Hon. Daniel Walker.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case

*T. J. Arnold* and *G. B. Ross,* for appellant.—On question of charge on self-defense: Parrish v. State, 153 S. W. Rep., 327; King v. State, 13 Texas Crim. App., 277.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of self-defense: Carr v. State, 41 Texas Crim. Rep., 380; Gay v. State, 58 id., 472; Feifer v. State, 64 id., 203.

DAVIDSON, PRESIDING JUDGE.—Appellant was awarded three years confinement in the penitentiary for manslaughter.

There are several questions in the case. One of these suggests the court was in error in charging on the theory of self-defense. There

were no eyewitnesses, and the wounds on the body of deceased showed that he was struck or killed with a blunt instrument, and the State relied upon the confessions and statements of appellant that he killed him with an ax. The State used the witness Young as to the statements of appellant made to him on Sunday morning after the killing which occurred Saturday night. Young said appellant told him he killed deceased in the night-time; said the trouble came up about six-bits; that they had been playing a game of cards for fun, "and that after the other bunch had left him—I don't remember whether they made up a fire after the others left or not—there was some more boys with them; that they had been hunting all night and had stopped to make a fire, but he didn't tell me whether the others of the bunch had gone on before they built the fire or not, but anyway there wasn't anybody at the fire but the defendant and the deceased." That at the time of the killing no one was present but himself and deceased. That appellant told him he and deceased had been playing cards for fun, and they began betting on a little game for money, and defendant put down six-bits and deceased picked it up and would not give it back to him; that he begged the deceased to give his money back to him, and he refused and "made fun of him about being out there without any clothes on." That he kept begging for his money and deceased would not give it to him; that deceased acted like he wanted to do something, and that from the way he talked he judged deceased had a gun or something, and that he knocked the deceased in the head with an ax; said that he knocked him down and hit him twice afterwards; and he said he started to leave and thought he would hit him again, but decided he would not do it, that he felt sorry for him. He did not say what the negro was doing to him when he hit him, except that he said he put his hand behind him. "He told me that at the time he struck deceased something had come up about six-bits. He told me that the deceased had told him that he was 'a ragged — son-of-a-bitch' and had no business out there if he didn't have on any clothes. That deceased had his money and would not give it to him. He tried to persuade the deceased to return his money to him, and deceased cursed him, and told him he had no business out there without any clothes on. He also told me that at the time he got his ax the deceased had put his hand behind him, and that he thought the deceased intended to hurt him or shoot him or something; that he didn't know whether the deceased had a gun or not, and he didn't want to take chances." This is enough to show the position of the case. The State put all this testimony before the jury.

The court charged upon murder, manslaughter, self-defense and insanity, which was also raised by the evidence. The court instructed the jury also that the State having put in this testimony was bound by it unless it could prove the statements false, and upon that theory charged also on self-defense.

In regard to self-defense the court charged: "Every person is per-

mitted by law to defend himself against any unlawful attack threatening injury to his person, and is justifiable in using all necessary or reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law if committed in defense of one's person against any unlawful or violent attack made in such manner as to produce a reasonable expectation or fear of death or some serious bodily injury. It is not necessary to the right of self-defense that the danger should in fact exist; it may be only apparent and not real; if it reasonably appears from all the circumstances of the case that danger exists, the person threatened with such apparent danger has the same right to defend himself against it, and to the same extent as he would be if the danger were real, and in determining the appearance it must be viewed from the standpoint of the defendant alone at the time and from no other standpoint; but the defendant is not required to retreat in order to avoid the necessity of killing his assailant.

"If you believe from all the evidence before you that from the acts of the said Arthur McKinney, if any, or from his words coupled with his acts, if any, there was created in the mind of the defendant a reasonable apprehension that he, the said defendant, was in danger of losing his life or suffering serious bodily harm at the hands of the said Arthur McKinney, then the defendant had the right to defend himself from such danger or apparent danger, as it reasonably appeared to him at the time, viewed from his standpoint; and if you so find you will acquit him. But in determining the rights of the defendant under his plea of self-defense, and in determining whether there was reason to believe that danger existed, viewing the appearances of danger from the standpoint of the defendant, the defendant could not use any more force than was necessary to defend and protect himself from the threatened danger."

Exception was taken to this charge, and it should have been sustained. Appellant's statement in regard to the matter was that he struck because he was afraid when deceased reached behind him he was going to get a gun or something and do him injury, shoot or kill him. This would be apparent danger, and ought not to have been trammeled by a charge restricting the amount of force appellant was authorized to use. The law with reference to resort to other means, or no more force than was necessary, does not apply to self-defense, actual or apparent. Appellant either had the right to kill from the appearance of danger, or he did not. He was not required to retreat, nor was he burdened with the restriction of not using more force than was necessary to meet his belief of danger to himself under the circumstances stated. The State placed this evidence before the jury, coming from the defendant as his statements, and would be bound by it unless disproved. There was no evidence before the jury as to any matters arising at the time of the homicide, there being no eyewitness,

so far as the record is concerned, except the defendant, and the State used his statements to the witness Young, and would be bound by them unless disproved, and the court so charged the jury.

There are other matters in the case which we deem unnecessary to discuss. The continuance as refused will not arise upon another trial as presented in this trial, and the manner of summoning the jury will not so arise; at least ought not to do so.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*