### McKinley Petty v. The State.

No. 5588.    Decided December 3, 1919.

**1.—Murder—Self-defense—Charge of Court—Defendant's Standpoint.**

Where, upon trial of murder, there was nothing in the evidence indicating that defendant was called upon to resort to any means other than force sufficient to repel the attack of the deceased and avoid the injury to himself from his standpoint, a charge of the court under the law of self-defense that homicide is justifiable in the protection of the person against any unlawful and violent attack, but in such cases all other means must be resorted to for the prevention of the injury, was reversible error. Following: Kendall v. State, 8 Texas Crim. App., 582, and other cases.

**2.—Same—Provoking Difficulty—Self-defense—Charge of Court.**

Where, upon trial of murder, the evidence did not raise the issue of provoking the difficulty, it was reversible error to submit a charge thereon limiting the defendant's right of self-defense. Following: Young v. State, 53 Texas Crim. Rep., 417, and other cases.

**3.—Same—Aggravated Assault—Charge of Court.**

In the event of another trial under like evidence, the court should submit a charge on aggravated assault arising under article 1149, Penal Code. Following: Hill v. State, 11 Texas Crim. App., 470, and other cases.

Appeal from the District Court of Smith. Tried below before the Hon. J. R. Warren, judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Calhoun & Gentry*, for appellant.—On question of court's charge of self-defense: Best v. State, 58 Texas Crim. Rep., 327, 135 S. W. Rep., 581, and cases cited in the opinion.

On question of provoking difficulty: Franklin v. State, 30 S. W. Rep., 231, and cases cited in the opinion.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—On question of provoking the difficulty: Taylor v. State, 80 S. W. Rep., 378.

MORROW, JUDGE.—The conviction was for murder, and punishment fixed at confinement in the penitentiary for a period of ten years.

The deceased and the appellant were negro youths and friends. They were employees of Meadows in working upon a public road. Meadows maintained a tent in which the men working for him slept upon pallets that were made on the ground. The deceased had been working for Meadows for some time. He and the witness Holmes slept together upon a pallet made of a wagon sheet. The appellant was employed on the day upon which the homicide took place. It was contemplated that the appellant should sleep in the tent, but that he should make his own arrangements about finding some place in the tent to occupy. Before retiring a conversation took place in which the appellant, answering an inquiry, said he was going to sleep in the tent, and the deceased remarked there was no place for him. Subsequently the appellant entered the tent and lay down upon the pallet which had been occupied by the deceased and Holmes. Later the deceased entered and insisted that the appellant surrender the bed. A colloquy took place, which the testimony does not indicate amounted to a quarrel. It was concluded, however, by the deceased remarking, "You wait until I come back; I'll bet you get up," at the same time going rapidly out of the tent; and on his immediate return the appellant struck him one blow with a pocket-knife, causing his death. There is but little conflict in the evidence relating to what transpired, except that the State's witnesses claim that the deceased had two sticks, while the appellant and his witnesses mentioned but one. There is no evidence of previous ill-will, except that a witness testified that during the evening, while a crap game was progressing, the deceased, who was not in the game, made some remark to which the appellant responded, telling the deceased to mind his own business, or words to that effect.

The witness Holmes, who was lying on the bed with the appellant, said that he got the impression that the controversy was friendly until the deceased got mad and ran out of the tent, saying "I'll bet you get up when I get back," and returned with a stick about the size and length of his arm; that as he entered the tent with the stick drawn back the appellant met him and struck him.

The appellant testified that he thought the controversy over the bed friendly, that he intended to move over and give the deceased the place in which he had been sleeping; that he did not know the deceased was mad until he saw him coming back with a stick; that he, the appellant, then got his knife out of his overalls, which latter he was using for a pillow, and that the deceased at that time was entering the tent and struck the appellant with the stick, the blow being warded off by the arm. His testimony was that he was frightened when he saw that the deceased was mad and approaching with a stick; that he then thought deceased was about to kill him, and struck for the purpose of preventing it; that he did not intend to kill the deceased.

The court submitted the law of murder, manslaughter, and self-defense. In connection with the latter, the court embodied in his charge the following:

"Homicide is justifiable in the protection of the person against any unlawful and violent attack, but in such case all other means must be resorted to for the prevention of the injury."

We regard appellant's complaint of this phase of the charge a just one. From appellant's standpoint, the attack upon him was one calculated to kill or seriously injure him. The danger was imminent and immediate. We discern nothing in the evidence relating to it indicating that appellant was called upon to resort to any means other than force sufficient to repel the attack and avoid the injury to himself. The law of self-defense is governed by statute in this State, and occasions arise in which the assault is of a character indicating that no serious injury is intended, and in resisting such an assault one must resort to other reasonable means at hand of preventing the injury before he can be justified in taking the life of his antagonist. See Art. 1107, Penal Code; Best v. State, 58 Texas Crim. Rep., 327; Terrell v. State, 53 Tex. Crim. Rep., 604. Generally speaking, when the assault is of a character which, viewed from the standpoint of the person assailed, is likely to produce death or serious bodily injury, Article 1105 of the Penal Code, which makes the infliction of death justifiable in preventing murder and other offenses named, controls. Kendall v. State, 8 Texas Crim. App., 582; Ainsworth v. State, 8 Texas Crim. App., 537; Hill v. State, 10 Texas App., 625.

The court limited appellant's right of self-defense. The evidence does not impress us as of a character making a charge upon provoking the difficulty appropriate. The act of the appellant in lying down upon the pallet and refusing upon request to surrender it was unlawful; and though it may have been inconsiderate, it does not appear to have been intended by him to bring about an assault by the deceased that harm might be done him, nor reasonably calculated to provoke the deceased to attempt to injure him. Young v. State, 53 Texas Crim. Rep., 417; Roberson v. State, 83 Texas, Crim. Rep., 238, 203 S. W. Rep., 349; Ruling Case Law, vol. 13, p. 833, sec. 137; Franklin v. State, 34 Texas Crim. Rep., 286.

While no complaint is made of the failure to charge on the law of aggravated assault, arising under Article 1149 of the Penal Code, and the evidence suggesting that the homicide may have taken place in a sudden passion and death inflicted with an instrument which was not *per se* a deadly weapon—Hill v. State, 11 Texas Crim. App., 470; and other cases cited in Branch's Annotated Penal Code, Sec. 2103,—we deem it proper, in view of another trial, to mention this phase of the case.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*