MACK JONES. v. THE STATE.

No. 5502.   Decided December 10, 1919.

**1.—Murder—Manslaughter—Charge of Court—Rule Stated.**

Where there are any circumstances that would mitigate or reduce the offense to a lower grade than that of which defendant was convicted, he is entitled to the benefit of such circumstances under appropriate instructions from the court as to the law as thereto applicable, and where, upon trial of murder and a conviction thereof, the record on appeal showed that the evidence raised the issue of manslaughter, a failure to charge thereon although requested is reversible error. Following: Hutchinson v. State, 40 Texas, 12, and other cases.

**2.—Same—Rule Stated—Theory of Defense—Charge of Court.**

Wherever the evidence presents an issue favorable to the accused, the trial court should not diregard it, but should fairly and freely submit such issue for the consideration of the jury under appropriate instructions, and an omission to do so cannot be treated by this court as immaterial. Following: Moore v. State, 15 Texas Crim. App., 1, and other cases.

**3.—Same—Manslaughter—Charge of Court—Case Stated.**

If it reasonably appeared, upon trial of murder, to defendant that he was in danger of serious bodily harm, injury or death at the hands of deceased, falling short of self-defense, and he was thereby aroused to such terror or resentment by such appearance as to render his mind incapable of cool reflection, he would be entitled to a charge on manslaughter. Following: McLaughlin v. State, 10 Texas Crim. App., 340, and other cases.

**4.—Same—Rule Stated—Manslaughter—Charge of Court.**

Where there is a doubt as to testimony, its cogency and effect, and its probable bearing upon the minds of the jury in their decision of the case, it redounds to the benefit of the accused and an appropriate charge should be given to cover that doubt.

**5.—Same—Continuance—Practice on Appeal.**

When the judgment is reversed and the cause remanded for other reasons, the overruling of an application for continuance need not be considered.

**6.—Same—Evidence—Declarations of Defendant.**

Where, upon trial of murder, the court admitted in evidence statements made by the defendant at the time he was brought from jail and executed his appearance bond, and there was some doubt as to whether he was then under arrest or had been discharged under a bond, and the court submitted this question to the jury, there was no reversible error, although this was a close question in the instant case.

Appeal from the District Court of Freestone. Tried below before the Hon. A. M. Blackmon, judge.

Appeal from a conviction of murder; penalty, twelve years imprisonment in the penitentiary.

The opinion states the case.

*Boyd & Bell*, for appellant.—On question of manslaughter: Wilson v. State, 80 Texas Crim. Rep., 442, and cases cited in the opinion.

On question of declaration of defendant: Wood v. State, 22 Texas Crim. App., 431; Nolen v. State, 9 id., 419; Gross v. State, 11 id., 364; Owens v. State, 16 id., 448

*Alvin M. Owsley*, Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder and allotted five years in the penitentiary.

The facts are quite voluminous, and only a brief statement will be made in order to review one question, to-wit: the failure of the court to charge the jury with reference to manslaughter.

The deceased, Dan Compton, it seems, had rented land under the control of Marvin Watson. This was subrented or let to appellant. There was a small spot of ground which appellant claims he was to have, rent free, for the purpose of planting a truck patch, potatoes, watermelons and such things. Deceased later had a discussion with defendant in which he demanded that this little spot of ground should be planted in corn. Appellant claimed it was too late to plant corn and that it would do no good, but in accordance with the wishes of deceased he did plant it in corn, and there was nothing raised from it; but later the deceased demanded of appellant that he pay rent for the land. Appellant demurred, but deceased insisted. Appellant finally stated, and perhaps an

agreement was had to that effect, that they would leave it to the justice of the peace and Mr. Marvin Watson as to whether rent on that small tract of land should be paid. Deceased demanded that appellant should not gather his corn crop from the rented premises unless the rent on this small tract was first paid. On going to the justice of the peace and Mr. Watson, they informed him to proceed with gathering his crop, and Watson said if he wanted rent from it he could get it from produce in other parts of the field. Appellant went home and began gathering his crop. He took his gun with him to the field, but fearing deceased would come concluded he would go home and leave his assistant to do the gathering of the crop. There was testimony introduced showing that deceased had threatened the life of appellant if he did not pay the rent, or gathered his crop without doing so. On the morning of the difficulty, appellant had gone to the field and carried his gun. After remaining for a short time he concluded deceased would come to the field as he had been doing and he would leave to prevent meeting deceased and having trouble with him. It is in evidence deceased went armed with a Winchester rifle. He seems to have carried it with him wherever he went. In leaving the field and upon reaching a fence, just outside of which was a road, the deceased made his appearance. Upon seeing appellant he raised his gun to his shoulder, and his horse turned, and appellant fired and immediately ran away to prevent deceased from shooting him. He testifies also that deceased fired. It seems to have been a fact that there were two shots fired. There is a great deal of testimony *pro* and *con* as to whether the gun of deceased was fired. The contention, therefore, of the State would be if deceased did not fire, appellant fired twice. Appellant evidently ran away in quite a hurry, for he lost his hat in leaving the scene of the trouble. Deceased's body was found about one hundred or one hundred and fifty yards from the place where the shooting occurred. Deceased had no authority to demand of appellant that he pay the landlord Watson rent on this small tract. The justice of the peace Kazey and the landlord Watson had given appellant instructions about the rent, and he was told by both to gather his crop.

The court failed to charge on the law of manslaughter; exception was reserved, and the matter is presented for revision. We are of opinion that in this matter the court was in error. The authorities seem to be harmonious in regard to this proposition: Where there are any circumstances that would mitigate or reduce the offense to a lower grade than that of which appellant was convicted he is entitled to the benefit of such circumstances under appropriate instructions from the court as to the law as thereto applicable. Hudson v. State, 40 Texas, 12; Williams v. State, 7 Texas Crim. App., at page 398; McLaughlin v. State, 10 Texas Crim. App., 340; Neyland v. State, 13 Texas Crim. App., 536;

Moore v. State, 15 Texas Crim. App., 1; Rutherford v. State, 15 Texas Crim. App., 236; Williams v. State, 15 Texas Crim. App., 617; Wilson v. State, 80 Texas Crim. App., 442. Wherever the evidence presents an issue favorable to the accused, the trial court should not disregard it, but should fairly and freely submit such issue for the consideration of the jury under appropriate instructions. Such omissions by the trial court can not be treated by this court as immaterial. Moore v. State, 15 Texas Crim. App., 1; Williams v. State, Id., 617. If it reasonably appeared to defendant that he was in danger of serious bodily harm, injury or death at the hands of deceased, falling short of self-defense, and he was thereby aroused to such terror or resentment by such appearances as to render his mind incapable of cool reflection, he would be entitled to a charge on manslaughter. See the same authorities. In McLaughlin v. State, *supra*, this language was used:

"If in a murder case there be evidence which, however, inconclusively, tends to prove facts from which the jury may deduce a finding of manslaughter, it is incumbent on the trial court to give the law of manslaughter in charge to the jury; and it should be given affirmatively, directly, and pertinently to the theory of the case indicated by such evidence." Neyland v. State, 13 Texas Crim. App., at page 550.

This quotation is also made from the McLaughlin case, *supra,* as quoted in Rutherford v. State, 15 Texas Crim. App., at page 248:

"Every theory presented by evidence in the case demands of the court a charge thereon, whether strongly or weakly supported by the testimony. If there be evidence tending to support it, the law must be directly and pertinently applied thereto. The jury, and the jury alone, must pass upon the strength of the evidence which tends to support the theory. Nor can the evidence be so full and complete in favor of one theory as to preclude evidence, or excuse the court in refusing or failing to charge the law relative to another theory."

From these authorities the proposition may be deduced as well as from the statutes and the general trend of our jurisprudence, that all theories favorable to defendant must be submitted to the jury under appropriate instructions. Where there is a doubt as to the testimony, its cogency and effect, or its probable bearing upon the minds of the jury in their decision of the case, it redounds to the benefit of the accused. In other words, a doubt of the facts brings always an appropriate instruction to cover that doubt. A doubt of the facts, and their cogency and effect and bearing, brings into play a doubt of the law, and whenever there is a doubt upon these propositions the defendant is entitled to the benefit of that doubt, and they must be resolved favorable to his side of the case. This is in accord and in harmony with the pre-

sumption of innocence with which the law clothes the accused, and this to the exclusion of reasonable doubt. We are, therefore, of opinion that the court should have given an instruction with reference to the law of manslaughter under the facts adduced in this record.

The refusal of the court to grant a continuance is not necessary to be discussed as it may not arise upon another trial, and if it should it may come under very different circumstances from those presented by this record.

We have examined with some degree of interest the ruling of the court with reference to the admission of statements made by the defendant at the time he was brought from jail and executed his appearance bond. The matter is left in doubt as to whether he was under arrest or not, that is, whether he had been discharged from custody after the execution of his bond. The evidence is *pro* and *con* and sharply contested. The court submitted this to the jury for their determination, substantially that if they should find he was under arrest they should disregard his statements; if not under arrest, then they should consider the statements along with the remainder of the testimony. Without discussing the matter, we are of opinion, as this is presented, perhaps the court was justified in submitting the issue. It is a very close question, and one about which the mind of the writer is somewhat uncertain. His statement as given by the county attorney is to the effect that he had gone to the place where the shooting occurred something like over one-half hour before the killing occurred. The defendant's contention was that the county attorney asked him how long he had been in the field, and not at the place of the homicide, before the killing occurred, and to this he stated about one-half hour or such matter. This testimony might have a material bearing upon the case, but it was a question for the jury's decision, and perhaps under the testimony the court was not in error in submitting this question.

For the refusal of the court to charge upon manslaughter this judgment will be reversed. We would say, however, that we are of opinion the continuance also should have been granted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*