ONIE WHITE v. THE STATE.

No. 5972. Decided November 17, 1920.

**1.—Murder—Deadly Weapon—Presumption—Charge of Court—Defendant's Standpoint.**

Where, upon trial of murder, the evidence showed that a pistol was found near the body of the deceased and that the trigger guard was bent so as to make it impossible to shoot with the pistol, and the court charged upon the use of a deadly weapon and the legal presumption arising therefrom in stereotyped form, the requested instruction to the effect that this law would apply to the defendant although the pistol of the deceased was

broken, this being unknown to the defendant, should have been given, as the theory of self-defense must be viewed from the defendant's standpoint. Following Ward v. State, 30 Texas Crim. App., 689, and other cases.

### 2.—Same—Manslaughter—Charge of Court.

Where, upon trial of murder, the evidence raised the issue of manslaughter, and showed among other facts that as the defendant approached the scene of the difficulty between his brother and the deceased he saw in the hands of the latter a pistol with which he was trying to shoot defendant's brother, and used language which was calculated to arouse in defendant's mind a degree of anger, rage, and resentment to render it incapable of cool reflection, the court should have submitted the requested charge on manslaughter. Following Pickens v. State, 86 Texas Crim. Rep., 657, and other cases.

### 3.—Same—Retreat—Charge of Court—Self-defense.

Where, upon trial of murder, the evidence showed that the defendant acted in defense of his brother in shooting the deceased, and raised the issue of retreat with reference to said brother who was engaged in the trouble and whose life was endangered, the court should have submitted a charge on the question of retreat. Following Dobbs v State, 51 Texas Crim. Rep., 113.

### 4.—Same—Evidence—Declarations of Deceased—Motive.

Where, upon trial of murder, the evidence showed as defendant approached the scene of the trouble between his brother and the deceased and demanded that the latter turn his brother loose, the deceased replied that he would not do so and that he was going to treat him like he had treated defendant's father, defendant should have been permitted to introduce testimony to prove the circumstances of the trouble between his father and the deceased, who had seriously injured his father in a personal conflict; both as to the theory of self-defense and manslaughter.

### 5.—Same—Evidence—Undisclosed Motive of Deceased.

Upon trial of murder, the widow of the deceased should not have been permitted to testify that her husband left home that morning, of the homicide, for the purpose of going to his pasture after some cattle or business connected with his landed property, all of which was unknown to defendant and his brother at the time. Following Adams v. State, 44 Texas Crim. Rep., 64, and other cases.

### 6.—Same—Principals—Charge of Court—Rule Stated.

It is always a safe rule to follow the statutory law, and without discussing the court's charge on principals it is suggested that he should adhere more strictly to the statute as it is written upon another trial.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of murder; penalty, ten years' imprisonment in the penitentiary.

The opinion states the case.

*Carl T. Harper, H. S. Morehead, A. F. Brigance, Haynes Shannon, E. A. Berry* for appellant.—On question of court's charge on deadly

weapon: Ward v. State, 30 Texas Crim App., 689; Burton v. State, 3 id., 410; Caldwell v. State, 5th id., 20; Forrest v. State, 3 id., 332; McMichael v. State, 49 Texas Crim. Rep., 425; Cromwell v. State, 60 id., 183; Myers v. State, 163 S. W. Rep., 432.

On question of refusal to charge on manslaughter: Guffee v. State, 8 Texas Crim. App., 201; Foster v. State, 8 id., 253; Thomas v. State, 48 Texas Crim. Rep., 68; Keith v. State, 50 id., 67. Casey v. State, 50 id., 396

On question of refusing to charge on law of retreat: Dobbs v. State, 100 S. W. Rep., 946

On question of excluding evidence on defendant's state of mind: Marshall v. State, 5 Texas Crim. App., 290; Francis v. State, 7 id., 513; McGuire v. State, 10 id., 127; Lane v. State, 164 S. W. Rep., 380.

On question of introducing testimony as to deceased's declarations that he would do defendant's brother like he did his father: Russell v. State, 11 Texas Crim. App., 288: Leech v. State, 139 S. W. Rep., 1152; Stubbs v. State, 193 id., 677.

On question of court's charge on principals: Newton v. State, 62 Texas Crim. Rep., 630.

On question of undisclosed motive of deceased: Standifer v. State, 212 S. W. Rep., 955; Adams v. State, 44 Texas Crim. Rep., 66.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and his punishment assessed at ten years in the penitentiary.

He and his brother Horace White were indicted in Grimes County for the murder of Dr. B. Harrison. The case was transferred on change of venue to Harris County. A severance was had and appellant tried and convicted.

The State's case, briefly, is that the deceased was riding along the road in the direction of where appellant lived and where appellant, his brother and another man were at work clearing timbered land; that the road deceased was traveling was near where they were at work, and as he approached they separated, Horace White going in one direction towards his home which was nearly a mile away and appellant going to his house which was within one hundred yards; that Horace White and deceased met within about fifty yards of appellant's residence, and in view as well as in hearing distance of the house; that deceased stopped his horse, and immediately thereafter Horace White shot the horse which deceased was riding and deceased fell or jumped from the horse and ran down the road, either in front of or in company with Horace White, and that while they were running down the road or about where they stopped appellant came to them with a shotgun, and Horace White, took the gun from his brother and shot the deceased. There seems to have been no motive

shown by the State for the difficulty, nor did they show any words that were passed between deceased and Horace White, or between deceased and Onie White, prior to the time the fatal shot was fired. The State's testimony further shows that immediately after the difficulty the first party arriving upon the scene of the killing found a pistol which had been discharged lying by the hand of deceased, and that the trigger guard on said pistol was bent in such a manner as to make it impossible to shoot the pistol.

Appellant's testimony is to the effect that he and his brother were clearing land about one hundred yards from appellant's house, and that about the time the deceased came in sight of where they were at work and before either appellant or his brother had seen him, they ceased work and appellant started to his house for the purpose of getting matches to build a fire to burn brush they had piled, and that Horace White, his brother, started to his home for the purpose of feeding his cattle some moss; that they separated, appellant going to his house and Horace White going in the direction of his home; that deceased and Horace White met, and appellant heard deceased say to his brother Horace: "Where are you going, you little thieving son-of-a-bitch?" to which question Horace answered, "I am going home," and deceased then said, "Do you think you can make the tracks you made Jim Wells make?" Horace replied, "I don't know that I have to." Deceased then said, "I will see if you can," reached in his pocket and pulled his pistol, and when he did this appellant ran in his house, which was about fifty yards from the scene of the difficulty, got his gun, and about that time he heard gun shots, and when he got back on the gallery where he could see deceased and his brother they were in a corner of the fence fighting; that he was excited and ran there as rapidly as he could and told deceased to turn his brother loose, and deceased replied, "No, I will not turn him loose. I am going to do him like I did your damn father." At the time deceased made this statement he had hold of appellant's brother with one hand and was pointing his pistol toward his stomach with the other and was trying to pull the trigger, when deceased said, "No, I will not turn him loose, I am going to do him like I did your damn father," appellant shot. That this happened in about fifty yeards and within sight and hearing of appellant's residence. Appellant further proved that at the time he shot deceased his mind was greatly excited, and that he shot while in this condition because he believed deceased was trying to kill his brother.

The court submitted the issues of murder and self-defense, omitting a charge of manslaughter. Appellant reserved exception to the court's failure to charge on manslaughter, and wrote out in full an elaborate charge upon the subject and presented it to the court, which was refused. To these matters timely exception was reserved. He also took exception to the court's charge upon the use of a deadly weapon and the legal presumption arising therefrom. The court charged with

reference to the use of a deadly weapon in stereotyped form, to the effect that from the use of such weapon the law would presume that he intended to kill or inflict serious bodily injury, and under this view of the law the jury would acquit if they believed the theory of self-defense. Exception was taken to this charge and requested instructions refused. The requested instruction carried the further idea that the court should have charged the jury that this law would apply to the defendant although the pistol was broken, it being unknown to defendant that the pistol was in that condition, and that when appellant came upon the scene deceased had his brother by one hand and was trying to shoot him in the stomach with his pistol. The facts show conclusively by the State's witnesses that the pistol was in the condition as above stated and could not be fired. Appellant contends he had a right to have the jury instructed under such circumstances that defendant's plea of defense of his brother would not be impaired by reason of the fact that the pistol was broken. We are of opinion that appellant's contention is correct. To him the condition of the pistol was unknown, and the matter presented itself to him that deceased was trying to kill his brother with the pistol as he approached with the shotgun. The theory of self-defense must be viewed from the defendant's standpoint and not in the light of subsequent events and facts. Whether the jury. in the light of subsequent events, believed appellant's evidence with reference to the condition of his brother and deceased at the time he came upon the scene would make no difference, so far as his view of it was concerned, in passing upon this issue. They must view it from the standpoint as it presented itself to defendant's mind at the time. It sometimes happens that facts as presented at the time the accused acts are not really as they appeared to him in the light of a fuller development of the transaction, but they must be viewed as the matter presented itself to him at the time he acted. It is the motive, intent and purpose then operating upon his mind that controls his action not only at the time but should control in the verdict of the jury and in the charge of the court. Appellant was entitled to the charge refused on this phase of testimony. See Ward v. State, 30 Texas Crim. App., 689; Burton v. State, 3 Texas Crim. App., 410; Caldwell v. State, 5 Texas 20; Cromwell v. State, 60 Texas Crim. Rep., 183; Meyers v. State, 71 Texas Crim. Rep., 594, 163 S. W. Rep.. 432

The court failed to charge upon manslaughter. Appellant reserved an exception and requested a very full charge embodying this phase of the law, which was refused by the court. This issue was clearly and definitely raised by this testimony. The State's theory was murder. Their contention was that appellant and his brother saw deceased approaching and they separated, appellant going to his house to get his gun and his brother Horace intercepted deceased and the difficulty occurred, and that the brother brought about the oc-

casion of the difficulty and shot at deceased while appellant was gone in the house for his gun. Appellant's theory was the contrary; that as his brother was walking along deceased stopped him and used the language already quoted and drew his pistol. This is appellant's side of it and he was entitled to have this presented in the charge. Under this testimony the deceased provoked the difficulty and brought about the occasion. If deceased did as shown by appellant's testimony, then his brother had the right of self-defense. The language imputed to deceased was calculated to produce the difficulty, and this was followed by drawing his pistol. Appellant's brother Horace fired a shot which wounded the horse of deceased. Deceased either jumped or fell from the horse, and appellant's testimony shows they engaged in a difficulty, and when he came out of the house with his gun they were something like fifty yards up the road from where the shot was fired and were fighting. As he approached he saw in the hands of deceased a pistol with which he was trying to shoot his brother in the stomach, and when he came to where they were he demanded that deceased turn his brother loose. Deceased informed him he would not, and that he intended to treat him like he did his father. This would place deceased in the wrong. Appellant had heard what occurred at the first meeting. He came out of the house and saw deceased and his brother engaged in apparently a deadly conflict or a very serious one. The language imputed to deceased at the first meeting and that imputed to him at the time of the homicide was calculated to arouse in appellant's mind a degree of anger, rage and resentment. It is no answer to this contention of appellant that he had the benefit of the law of self-defense. All the evidence is before the jury, and out of it the court must charge upon every issue presented by the testimony. This testimony unquestionably suggested the issue of manslaughter, and the court should have so charged. Among the later cases which seem to be very much in point are Pickens v. State, 86 Texas Crim. Rep., 657, 212 S. W. Rep., 755; Jones v. State, 86 Texas Crim. Rep., 371, 216 S. W. Rep., 884, and prominently among the cases on this issue may be quoted Guffee v. State, 8 Texas Crim. App., 201, and Foster v. State, 8 Texas Crim. App., 253, supported by a great number of other cases, among them Kemp v. State, 11 Texas Crim. App., 195; Arnwine v. State, 49 Texas Crim. Rep., 6; Keith v. State, 50 Texas Crim. Rep., 67; Casey v. State, 50 Texas Crim. Rep., 396; Rice v. State, 51 Texas Crim. Rep., 285, and Thomas v. State, 48 Tex. Crim. Rep., 68. The Thomas case, *supra*, is very much in point as we think the Pickens and Jones cases, *supra*. It would be useless to quote from these authorities. The cases were well considered as is shown by a perusal, especially the Pickens and Guffee cases. The court should have charged upon the issue of manslaughter.

The court failed to charge upon the law of retreat in connection with the issue of self-defense. Exception was reserved and a charge

asked to cover this omission, which special charge was refused. The law of retreat was not charged in any phase of the instructions. This was error. Perhaps the law of retreat did not apply to appellant as his theory of self-defense was that of shooting to save the life of his brother. He was himself in no danger, but the jury should have been instructed in regard to the law of retreat especially with reference to the brother Horace, who was engaged in the trouble and whose life was in danger. This question was definitely decided in Dobbs v. State, 51 Texas Crim. Rep., 113.

Appellant testified as he approached the scene of the trouble he demanded that deceased turn his brother loose. Deceased replied that he would not, and that he was going to treat him like he had treated his damn father. Now appellant understood that. He knew about the previous difficulty between deceased and his father, and he offered to prove the circumstances of the trouble between his father and deceased and the court excluded it. The bill shows that he could have proved unquestionably that his father and deceased had a law suit about a yearling in which the father was the successful adversary in the litigation. That subsequently deceased came upon him, jerked him down and gave him a very severe beating and stamped him in the face and about the throat and put him in bed, and he was forced to keep his bed and room for quite a while, perhaps two months, and for some days totally blind and his throat very much swollen. The appellant knew all this but the jury did not. Appellant claimed and we believe correctly that he had the right to have explained to the jury what deceased meant when he said he would treat appellant's brother as he did his father. They were engaged in a personal difficulty, deceased having a pistol and was threatening to treat that brother as he had treated his father. If this evidence had been admitted the jury would have known what deceased meant and probable effect upon appellant's mind. This testimony was admissible as bearing upon the issue of self-defense and also admissible upon the theory of manslaughter. His mind was already excited by reason of what he had heard before entering the house to get his gun, and this added to it was calculated to excite his mind and render it incapable of cool reflection. It was admissible, therefore, upon both issues.

There is another question suggested: Mrs. Harrison, widow of deceased, was permitted to testify that her husband left home that morning for the purpose of going to his pasture after some cattle or business connected with his landed property. He lived something over a mile from where the difficulty occurred. This had a tendency to impress the jury with the fact that deceased was a peaceful man, going about his private business, and perhaps not the attacking party, and that appellant's brother was. This was unknown to appellant or his brother. There is no question of the fact raised that they were unaware of the movements or reason for the movements of deceased at the time or what his motive was. They were, therefore, undis-

closed. The Undisclosed motives of deceased under the circumstances here detailed would not be admissible. This question has been the subject of decisions, and among others we cite Adams v. State, 44 Texas Crim. Rep., 64-66 and cases therein collated; also Standifer v. State, 85 Texas Crim. Rep., 594, 212 S. W. Rep., 955. We think this evidence should be excluded on another trial. It may not have been such error as requires reversal if it was the only question presented.

The charge on principals is criticised. Without discussing this we think upon another trial the court should adhere more strictly to the statute as it is written. It is always a very safe rule to follow the statutory law. Deviations from this are often troublesome and lead to no good results. Upon another trial we would suggest that the court conform his charge on principals to the provisions of the statute.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*