## Will Watson v. The State.

No. 18499.   Delivered December 23, 1936.
Rehearing Granted April 7, 1937.

The opinion states the case.

*T. H. Yarbrough* and *Donald, Kearby & Donald,* all of Bowie, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of murder

with malice aforethought, and his punishment was assessed at confinement in the state penitentiary for a term of ten years.

The testimony adduced upon the trial shows that appellant and Charlie Roe owned adjoining farms; that Dave Sheen, the father of J. D. and Elmer Sheen, had rented the farm from Mr. Roe and was occupying it with his family; that there was an old road leading from appellant's premises over the land of Charlie Roe to Dye Mound which appellant and his grantor had used for more than twenty years. Sheen had forbidden appellant to use the passageway or easement and wired up the gate. On several occasions when appellant found the gate closed he cut the wires and passed on through. On one occasion, when he started through and found the gate closed up, he met Mr. Sheen and two of his sons at or near the gate, and some little trouble arose and threats were made. About two or three weeks after this occurrence, but before the fatal difficulty appellant went to see the county attorney and the sheriff to get their advice. They promised him that they would come down at the end of that week and try to settle the difference, but by reason of excessive rains, which made the roads heavy, they did not go. On the 19th day of May, 1935, when appellant on horseback started up the old road across the premises occupied by Dave Sheen, the deceased and his brother saw him leave his home and they went to the gate to intercept him. There they used some abusive language towards and concerning him, which precipitated a difficulty, terminating in the fatal shooting of J. D. Sheen and the infliction of serious wounds upon the person of Elmer Sheen by the appellant.

By bills of exception numbers one and two appellant complains of paragraph nine of the court's main charge wherein the court instructed the jury as follows:

"* * * Homicide is justifiable in the protection of a person against any other unlawful attack besides such as would produce death or serious bodily injury, but in such cases all other means at hand, as the situation reasonably appears to the defendant at the time, as viewed from his standpoint, must be resorted to for the prevention of the injury," etc.

Appellant's contention is that the charge is on the weight of the evidence, that such issue is not raised and might be construed by the jury that the court was of the opinion that there was created in the appellant's mind an apprehension that he was being unlawfully attacked in a milder form which is contrary to his testimony. We think there is testimony in the record which justifies such an instruction.

Appellant testified to an attack on him by Elmer Sheen who he said caught the bridle on his horse with one hand and with some kind of an instrument in the other hand inflicted a wound upon his, appellant's cheek, from which a few drops of blood trickled down his face; that at the time he was so assaulted he fired the first shot at Elmer and when he, Elmer, fell against the horse he fired the second shot, and that while he was shooting at Elmer, the deceased was assaulting him with a green stick. Appellant further testified that after he had passed through the gate he saw J. D. Sheen and Elmer Sheen coming towards him; that in passing he spoke to them; that after he had passed them, J. D. said, "Are you going to let him get by with it,"—to which Elmer replied, "Yes, let the dammed so— o— b— go,"—that when this was spoken his pony suddenly turned, started back towards the boys, and when practically up to them his horse stopped, and Elmer grabbed the head stall or reins up near the bridle bit, struck him, appellant, on the cheek with some instrument (which he did not see and could not describe); that he did not try to run over appellant, did not try to kick him loose, and did not do anything to protect himself other than to start shooting.

No weapon of any kind was found on the person of either Elmer or J. D. Sheen. The only thing that was found on the battle ground with which the assault might have been made was a small pair of pliers.

Appellant further testified that at a former time he met Dave Sheen, J. D. Sheen, and King Sheen at the gate which they had closed with wire; that he had dismounted and tried to stamp the wire loose; that on this occasion each of the three had a club, but he was not afraid at that time of receiving any serious bodily injury at their hands. However, at the time he killed J. D. Sheen he was attacked by only two of the parties, one having a club and the other a pair of small pliers. Just why he expected to be killed or receive serious bodily injury on this occasion and not on the former when he was attacked by three parties was not explained by him.

The court, however, fully instructed the jury on the law of self-defense as follows:

"That if from the acts of J. D. Sheen and Elmer Sheen, or either of them, or from their words coupled with the acts of J. D. Sheen and Elmer Sheen, or either of them, there was created in the mind of the defendant a reasonable apprehension that he, the defendant, was in danger of losing his life or suffering serious bodily injury at the hands of J. D. and Elmer

Sheen, or either of them, that the defendant had a right to defend himself from such danger or apparent danger, and that it is not necessary to the right of self-defense that the danger should in fact exist, but if it reasonably appeared to the defendant at the time viewed from his standpoint, that such danger existed he would have the same right to defend against it as he would have, had the danger been real," etc.

It occurs to us that the facts in this case were such as justified the court in submitting the charge complained of. It was a matter for the jury to determine from all of the facts and circumstances before them whether the assault or threatened assault upon the appellant, was such as created in his mind, as viewed from his standpoint at the time, a reasonable apprehension or fear of death or serious bodily injury such as would justify him in killing either or both of his assailants, or whether the attack was of a milder nature.

By bills of exception numbers five and six appellant objected to the introduction of photographs taken of the scene of the alleged homicide, on the ground that the pictures were made subsequent to the alleged homicide in the absence of the defendant, that the same were hearsay, immaterial and irrelevant, and the positions taken for their exposures were entirely in the control of the State's counsel, and because it was not shown that the same condition existed at the time of making the pictures as existed at the time of the transaction which they seek to illustrate. The testimony offered in connection with the pictures shows that the homicide occurred about the 19th of May, that the pictures were taken sometime in June, and that the ground or territory which the pictures sought to reproduce was in the same condition at the time the pictures were taken as it was at the time of the homicide. We think that under such a state of facts the photographs were properly received as evidence. However, the objection went more to the weight than to the admissibility thereof.

The matters complained of in bill of exception number seven fail to show any reversible error, inasmuch as the court advised counsel for the appellant that he would permit them to elicit all the testimony sought to be elicited from the witness except his self-serving declaration.

Bill of exception number eight reflects the following occurrence. The State offered Dick Lawrence, a deputy sheriff, as a witness and proved by him that a capias had been issued by the clerk of the district court of said county for the arrest of appellant on a charge of assault with intent to murder Elmer

Sheen—to which the appellant objected and the court promptly sustained the appellant's objection, and instructed the jury not to consider the same for any purpose whatever. We do not believe that this error, if any, was such as would cause reversal of this case inasmuch as defendant himself testified that he first fired two shots at Elmer Sheen and then fired the third at J. D. Sheen. Elmer Sheen, while a witness, testified without objection to the wounds inflicted upon him by appellant. Hence the matter of an assault upon Elmer Sheen with a deadly weapon as well as the location and effect of the wound upon his body was already before the court and the testimony complained of could not have injuriously affected the appellant's rights.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—After charging on self-defense in paragraph eight of his charge, the trial court followed same, apparently without request therefor, with a charge in paragraph nine upon self-defense against an attack less than deadly, —coupling paragraphs eight and nine by saying:

"You are instructed as part of the law of self-defense * * * that if you believe that the defendant shot J. D. Sheen as a means of self-defense, as that term is described in this paragraph of the charge, believing at the time he did so that he was in danger of receiving an unlawful injury of a milder nature at the hands of the said J. D. Sheen and Elmer Sheen or either of them, and that the defendant resorted to all other means at hand, as it reasonably appeared to him at the time, for the prevention of the injury and that the defendant acted while the said J. D. Sheen and Elmer Sheen, or one of them, was in the act of making an unlawful assault upon him, or if you have a reasonable doubt as to whether the killing of J. D. Sheen occurred under such circumstances, then you will find the defendant not guilty."

Appellant earnestly contends that the part of the charge quoted, together with other parts of like nature and effect, was not applicable to the facts, and placed an unwarranted limitation on his right of self-defense, and was calculated to lead the jury to believe that he had no right to use his pistol until he had tried all other means to defend himself.

We need not say at length that a charge should fit the facts of a case from the standpoint of the accused as well as that of the State. The facts in this case show that appellant shot two brothers,—one to his death. From the standpoint of the State, the brothers, unarmed, remonstrated with appellant for opening a gate and riding through on land they had rented, and for his conduct toward their father; and that after appellant got on his horse to ride away, deceased,—the younger of the two,— said "Are we going to let him go on like that?" and Elmer Sheen, the other brother, replied "Yes, let the G— d—n s— of a b go." When Elmer said this appellant pulled a pistol, turned his horse, came up with the pistol and shot Elmer in the neck. Elmer stumbled, and was shot again in the back as he was falling, but before he was shot the second time appellant had turned and shot deceased, who was further away than Elmer and in a different direction. Deceased was shot in the head and died. Elmer testified to the above facts among others as a witness for the State, and said neither he nor his brother made any attack upon or attempted to strike appellant on said occasion; and that he, Elmer, had a pair of pliers in his pocket which were never taken out, and that deceased had no club in his hand, and that Elmer never caught hold of the bridle of appellant. In other words, according to the State's view, the killing was either upon malice or passion caused by the remark made by Elmer to his brother just before it was claimed appellant drew his pistol and shot, and the State made no claim and introduced no evidence to show any attack of any character by either of the Sheens upon appellant.

Appellant's story was altogether different. He said he had been using a road leading through Roe's land to Dye Mound, which road had been open and used for more than thirty years until the Sheens rented said Roe land. He testified to the troubles over a gap on this road which the Sheens fastened up in various ways as often as appellant opened it. The killing occurred at this gap. Appellant had consulted the county attorney and other officers about what he should do in the premises. On this Sunday morning appellant said he had started to Dye Mound, went to the gap or wire gate mentioned, opened it, led his horse through, got back on him and started off, when he caught sight of the two Sheen brothers,—Elmer and J. D.,— near him and coming toward him, and he said he also saw some one in the bushes, in the direction he had to go, moving over toward the road, apparently a few steps from same. His pony whirled right in front of the two Sheens, and Elmer grabbed

his bridle on the right side and J. D. started around to his rear on the left, and went out of appellant's sight. About this time Elmer struck appellant in the face with something that made a scar on the jaw, which appellant said he had at the time of the trial; when this blow was struck appellant said he reached for his pistol. The blow almost knocked him from his horse, and would have done so but he held to his saddle horn. Appellant said he told Elmer to stop, and drew his pistol and shot at Elmer as quick as he could, but could not tell whether he hit him or not as he did not fall, but drew back to hit the second time, and appellant fired at him again. What then occurred, according to appellant, we let him say:

"While that was taking place I didn't see J. D., but in the mean time there had been something strike me here on the arm, a pretty heavy blow on this arm and another blow just back of my head on top of my shoulders. About the time Elmer fell there was a sound behind me that sounded like a lick, something like that, which I judge was my horse because my horse whirled as quick as he could do so after Elmer fell. After my horse whirled J. D. was standing just to the right and in front of me with this stick in his hand and he said, 'I will kill you' and struck at the same moment, then I fired as quick as I could at him and he fell. After he fell I momentarily sat there on my horse and kinda rubbed my face and head. I was just a little bit dazed from that blow on my back."

Appellant had already sworn that when deceased passed out of his sight on the left he had a green stick or club in his hand about the size of appellant's wrist at one end. As to how appellant viewed his situation at this time, we again let him state:

"At the time I fired those shots I fired them because I thought my life was in danger and from the remarks those boys made when I rode by them and the remarks they made after I turned back there I thought I was trapped. It was very evident to my mind that those boys were angry and that they was looking for trouble, and I couldn't feature those boys being there without their father. I didn't know at that time who it was in the brush on up there waiting, and I didn't know at that time whether or not the person on up there was armed or not."

On cross-examination appellant again said:

"I don't believe I could have stood many blows like that, I certainly thought I was in great danger at that time. I don't know what you mean by me being afraid, I figured my life was in danger. I saw those two boys and saw another one in the brush and was afraid I was going to lose my life. When I saw

J. D. and King and Mr. Sheen there I saw all three of them and this time I didn't know who was in the brush."

In response to questions by State's counsel appellant said he did not try to run over these parties, or take his foot out of the stirrup and try to kick them, or try to knock them over with his pistol, or whirl his horse and try to get away from them, or try to knock them down. Appellant made no claim of self-defense against an attack by the Sheens less than deadly, as it appeared from his standpoint.

As we view the testimony, appellant was entitled to have his right of self-defense affirmatively presented without limitation based on any duty to resort to all other means before taking the life of his assailant. Mr. Branch in Sec. 1919, at page 1071, of his Annotated P. C., says:

"If defendant acts under a reasonable expectation or fear of death or of serious bodily injury, produced by the acts of his adversary at the time of the homicide, he is not bound to retreat nor to resort to other means of averting such danger, but may slay his adversary if the danger be imminent and pressing, or if it reasonably appears so to be to defendant, viewed from his standpoint at the time."

Mr. Branch cites many cases. We call attention also to others. See Terrell v. State, 53 Texas Crim. Rep., 608; Milam v. State, 3 S. W. (2d) 97; McPeak v. State, 80 Texas Crim. Rep., 50; Jones v. State, 86 Texas Crim. Rep., 371; Escobedo v. State, 88 Texas Crim. Rep., 277; Blacklock v. State, 196 S. W. Rep., 822; Petty v. State, 86 Texas Crim. Rep., 324; Fleming v. State, 101 Texas Crim. Rep., 24; Liston v. State, 105 Texas Crim. Rep., 531.

We are constrained upon more mature consideration to believe the charge referred to and discussed was erroneous, and the matter of gravity enough to call for reversal. The cross-examination of appellant, above set out, was calculated to lead the jury to think appellant should have tried to ride over or kick the boys before he would have the right to shoot.

The appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*