## DENNIS HUDSON v. THE STATE.

1. Under the provisions of the Code of Procedure the objection that the grand jury was not legally constituted cannot be raised on a motion in arrest of judgment. It can be urged by challenge, and in no other way.

2. An indictment commencing, "In the name and by the authority of the State of Texas, the grand jurors for the State of Texas, duly impanneled, charged and sworn by the District Court of the county of Rusk, in said State of Texas, to inquire of and present all crimes and offenses indictable by said District Court within the body of the county of Rusk, on their oath present," and shown by the records to have been returned into court, sufficiently shows that it was presented in a court having jurisdiction.

3. The courts will take notice of the time for holding the District Courts.

4. The charge of the court must have reference to the evidence; and where the facts conduce to establish that defendant may be guilty of something less than is charged, the difference between the degrees should be explained to the jury; and where any mitigating circumstances appear, the effect of the same should be explained by appropriate instructions.

5. It is not error to refuse to charge the law of manslaughter, or the distinction between murder in the first and second degrees, unless there be something in the evidence which, if believed by the jury, would reduce the offense to manslaughter, or to murder in the second degree.

6. See facts held by the court to constitute a case of murder in first degree.

APPEAL from Rusk. Tried below before the Hon. J. B. Williamson.

Dennis Hudson was indicted for murder on the twelfth of September, 1873; on same day capias issued. On the 13th he was arrested, and on the 20th he was tried and convicted of murder in the first degree, with commutation of punishment to imprisonment for life.

His motions in arrest of judgment and for new trial were overruled, and he appealed.

The proceedings are set forth carefully in the opinion.

*Drury Field*, for appellant.

*Browne*, for the State.

REEVES, ASSOCIATE JUSTICE.—The appellant was tried and convicted for the murder of one Charley Craig, and his punishment fixed by the jury at confinement in the penitentiary for life.   There was a motion for a new trial and motion to arrest the judgment.

The defendant sought to arrest the judgment on three distinct grounds :

1.  Because the grand jury by which the indictment was preferred was illegal, the same having been selected by the District Court, when, by law, the said grand jury should have been selected by the County Court of Rusk county, and not by the District Court.

2.  Defendant says the indictment in this cause is insufficient because it does not appear in said indictment that it was presented in a court having jurisdiction of the same, it not appearing from the allegations in said bill of indictment that it was presented or found during the term of the District Court, as required by law.

3.  Because the verdict of the jury is too uncertain to sustain the judgment of the court.

The reasons for a new trial as stated in the motion are, first, because the jury found their verdict contrary to law and against the evidence ; the second and third grounds are in substance the same, for alleged errors in the charge to the jury and for not instructing the jury on the different degrees in murder.   The motions were overruled, from which the defendant appealed, and assigns for error the grounds stated in the motions, and the further ground

that the court should have submitted to the jury whether the defendant was guilty of manslaughter.

Under the provisions of the Code of Procedure the objection that the grand jury was not legally constituted could not have been made available on the motion in arrest of judgment. (Article 2868.)

It is provided by Article 2830 "that any person, before the grand jury have been impanneled, may challenge the array of jurors or any person presented as a grand juror." One of the causes for challenge to the array is the same as that presented by the motion for the arrest of the judgment. (Art. 2831.)

A challenge is not simply one mode of reaching the objection, but the statute declares in express terms that the objection shall be made in no other way.

The indictment does not appear to be subject to the objection that the court was without jurisdiction. It appears to have all the requisites required by the code, or, if wanting in any essential part, attention has not been called to it, nor has it been indicated in the briefs of counsel.

The indictment commences, "In the name and by the authority of the State of Texas." It is shown that the grand jury was duly tried, "impanneled, charged and sworn by the District Court of Rusk county, in the State of Texas, to inquire of and present all crimes and offenses indictable by said District Court within the body of the county of Rusk." The bill was returned into court by the grand jury, and was filed September 12, 187. The capias for the defendant was issued on the same day, and recites that the District Court was then in session. No exception was taken to the indictment, nor objection of any kind interposed prior to the motion in arrest, to indicate the alleged insufficiency in the indictment. The Fall term of the District Court for Rusk county commenced on the first Monday in September, as required by

the statute, and being a general and public statute the courts will take judicial notice of the time. Therefore we believe the indictment is sufficient. The term of the court is not given in the caption, nor is it one of the requisites required by the code in framing the indictment. The term of the court appears from other portions of the record. The recital in the caption of the transcript that the term began on the twentieth of September is corrected by the record.

Appellant's counsel urges in his brief that the facts do not present a case of murder in the first degree, and that there were circumstances of mitigation that reduced the killing to manslaughter, or at least that the court should have instructed the jury on the degrees in murder.

The charge of the court must have reference to the evidence. The court should instruct the jury upon the law applicable to the case as made by the proofs. Where the facts in evidence conduce to establish that the defendant may be guilty of something less than that with which he is charged, when the offense admits of degrees, the difference between the degrees should be explained to the jury by instructions from the court. And where there are any circumstances that would mitigate or reduce the offense to a lower grade, the defendant should have the benefit of those circumstances, under appropriate directions to be given by the court. Under these general rules it is believed that this case presents no serious embarrassment to a decision.

There is nothing in the evidence that made it necessary for the court to explain to the jury the degrees in murder, or to instruct them upon the law applicable to the difference between murder in the first and second degrees, or the constituents in manslaughter as distinguished from murder. No fact or circumstance was proved on the trial that would justify or excuse the homicide, or reduce it to murder in the second degree, or to manslaughter, as

defined by the code and expounded by this court. (See Atkinson v. The State, 20 Texas, 522; McCoy v. The State, 25 Texas, 37; O'Connell v. The State, 18 Texas, 364; Villareal v. The State, 26 Texas, 109; 1 Paschal's Digest, Arts. 2266, 2250 and following article.)

The defendant was in no danger and could not have been injured by the deceased when he was shot and killed. Whatever threats the deceased may have made, if they were made to him, or in his hearing, he did not attempt to execute them; and had he attempted it, the circumstances show that he was not in a condition to do the defendant any harm at the time of the homicide. The deceased, at the time he was shot and killed, was sitting down on a log, his axe by his side, when defendant came through the bushes with a gun, and when about thirty yards from the deceased, called to him and said, "Look out Charley, I am going to shoot you," and fired, killing him immediately.

The theory of the defense is, that the provocation offered by the deceased to the defendant, and which occurred about two hours before the killing, reduced the homicide to manslaughter, if it was not murder in the second degree, and that the court should have charged the jury in this view of the case.

The force of the argument will be better understood when the evidence is stated with the charge of the court upon it.

It appears from the statement of facts that on the tenth day of August, 1873, the deceased and the defendant were employed to work at a steam saw-mill—the defendant being the sawyer and the deceased being the one who turned the headblocks or assisted in setting the headblocks and stocks to be sawed; that the carriage ran off the track, when the defendant told Craig, the deceased, to put the carriage on the track. Craig answered that he could not, it was more than one man could do. There-

upon the parties quarreled; Craig called defendant a son-of-a-bitch. The witness describes the parties as being in a hostile attitude, each with a handspike drawn on the other. The owner of the mill interfered and stopped the difficulty, ordering the deceased to go and cut wood, which he did. The defendant was called to adjust a screw in the pump about the mill. After fixing the pump he returned to his work at the saw.

The parties met again at the carriage—it is not shown how long after—the deceased turning or setting the head-blocks, and the parties quarreled again. The witness could not say who commenced it. Craig raised his stick at defendant, the stick he always carried, he being a crip-ple. The defendant left the saw-mill and walked around the furnace and boiler; the deceased followed him, pick-ing up his axe, defendant saying to him about that time, "Go away, Charley, and let me alone." Deceased said to defendant, when defendant had gone about fifty or sixty yards away, "I will kill you." The defendant went on to dinner in the direction he had started. The mill hands also went to dinner, except Craig, who re-mained at the mill, and was sitting upon a log about twenty yards from the mill when he was shot by the de-fendant, under the circumstances already mentioned. A witness, the step-son of Craig, proved that he heard de-fendant say that he would kill Craig; he said it in a low tone of voice. The other witnesses say they did not hear it. Another witness says that the stick Craig had was about the size of a chair round, which Craig always car-ried. It was proved that Craig was a cripple, and could not walk more than a mile an hour; always walked with a stick; could not walk without it; often used two.

There is some conflict in the evidence about the size and kind of stick used by Craig, and some doubt whether either party heard the threats made by the other. The

2

main facts, however, are proved by all the witnesses, without conflicting.

The previous difficulty between these parties was no justification or excuse for shooting the deceased two hours after it occurred ; nor would it reduce the act from murder to manslaughter.

The court charged the jury, that if they were satisfied from the evidence, without a reasonable doubt, that the defendant, in the county of Rusk, any time within one year next before the filing of the indictment, coolly, willfully, deliberately, and with a premeditated purpose and formed design to kill, shot and killed Charley Craig with a gun, they should find the defendant guilty of murder in the first degree ; otherwise, they should not.

In other parts of the charge, the jury was instructed that if the defendant was in danger of his life, or had good reason to apprehend great injury from the deceased at the time of the killing, then the defendant had the right to shoot. The court also instructed the jury that if the deceased had threatened the life of the defendant, and the same had been made known to the defendant, he had the right to act upon the threats, if the deceased was in the act of executing the threats ; otherwise, he would not.

The jury, under the charge of the court, substituted imprisonment for life for the capital punishment, as provided by the Constitution.

In view of the evidence, we find no error in the rulings of the court, of which the defendant can complain,. or in the verdict of the jury for uncertainty, or as against the evidence, and the judgment is affirmed.

AFFIRMED.