## No. 5922.

### DAN CHAMBERLAIN v. THE STATE.

PRACTICE—CHARGE OF THE COURT.—It is required that the charge of the court in a criminal case "shall distinctly set forth the law applicable to the case;" and the "law applicable to the case" means the case as made by the evidence. See the opinion in extenso for a charge of the court in a theft case *held* to be erroneous because it rests the guilt of the accused upon a state of case not made by the proof.

APPEAL from the District Court of Caldwell. Tried below before the Hon. H. Teichmueller.

The conviction was for the theft of a watch of the value of twenty dollars, and the penalty assessed by the verdict was a term of two years in the penitentiary.

L. B. Lamson was the first witness for the State. He testified that he was the owner of the alleged stolen watch. He was now a resident of Smithville, but at the time of this offense was living in Caldwell county, at a railroad camp. On or about September 1, 1887, the witness overtook the defendant and Bob Chamberlain and Ed Clark, Jr., riding along the road near the town of Dale in said county. In the course of the conversation which ensued the defendant observed the watch worn by witness, and proposed to trade for it. The witness replied that the watch was a present made to him by his mother when he left Kentucky to come to Texas, and that he would not trade it. Defendant, who then had a roll of money in his hand which witness saw, offered to give him fifty dollars for the watch. Fifty dollars being more than double the value of the watch the witness agreed to accept it. Defendant then proposed to witness that witness should put the watch in the hands of Bob Chamberlain, and that he, defendant, should put the roll of money in the hands of Ed Clark, and that Clark should count the money to the witness. Witness accordingly handed the watch to Bob Chamberlain, and defendant handed the roll of money to Clark. Bob Chamberlain at once passed the watch to defendant and Clark offered the roll of money, just as he received it from defendant, to witness. Witness at first refused to receive the roll of money, but finally took it, unrolled it and found the roll to

contain only a one dollar United States currency bill, a mutilated one hundred dollar Confederate States bill, of no value whatever, and a small fold of blank paper, which articles the witness now produced for the inspection of the jury. Witness protested against this transaction, demanded the return of his watch, and handed the money, the mutilated Confederate bill, and the piece of blank paper back to Clark, who immediately rode off, leaving witness and defendant in the road. Clark having gone some distance, the defendant told witness that if he would overtake Clark, recover the money and return with it and deliver it to him, he would return the watch to witness. Witness overtook Clark, demanded and recovered the money and returned to the place where he had left defendant, but defendant had disappeared. Witness had never recovered the watch, which was of silver and worth twenty dollars. Defendant did not have the consent of the witness to take his watch in the manner that he took it.

Cross examined, the witness said that the watch taken from him by the defendant in the manner stated, was a full jeweled, coin silver watch, with Elgin works, and, when new, cost with the chain the sum of twenty-five dollars. Independent of the chain, which was not taken, the watch was worth twenty dollars. The witness denied that he proposed to trade his watch to the defendant for the roll of money intact, without counting it. He did not propose to put the watch in the hands of Bob Chamberlain, and that defendant should put the roll of money in Clark's hands, and that the exchange of possession of the watch and money respectively should be made through them. That proposition was made by the defendant, and was carried out at his instance. Witness denied that, after the transaction, he said: "I am bit, but it is a fair trade. I never made such a trade in my life without getting bit." Witness did think that he was getting a big advantage in the trade when he made it on the defendant's offer of fifty dollars for the watch. Witness had the roll of money in his hand for a moment just before the exchange was made, but not long enough to examine it. His horse was cutting up too much for him to examine it closely.

The State closed.

Bob Chamberlain was the first witness for the defense. He testified that he was a cousin of the defendant. Witness was present when the watch trade was made between the defendant and the State's witness, Lamson; heard all that was said, and

saw all that transpired on that occasion. Lamson proposed to the defendant to trade him the watch for the roll of money which the defendant then had in his hand. After considerable "parleying" and negotiation, the defendant remarked to Lamson: "There is no trade in you." Lamson replied: "If you think so, just put your roll of money in Clark's hands, and I will put the watch in Bob's hands." Defendant at once passed the roll of money to Clark, and defendant handed his watch to witness, who delivered it at once to defendant. Clark did not unroll the money, but handed it intact to Lamson, who took it, unrolled it and said: "I am bit, but it is a fair trade; I never made such a trade in my life without getting bit." Lamson at no time refused to receive the roll of money. Nothing was said about fifty dollars or any other specific amount at any period of the negotiation. Nothing whatever was said about Clark counting the money to Lamson. The trade was made upon the terms proposed by Lamson and agreed to by the defendant. No agreement was made, after the exchange, for the defendant to wait at the place of exchange for Lamson, but defendant did agree to sell the watch back to Lamson for ten dollars, and to wait at Dale a specified time for Lamson to get the ten dollars and bring to him. Defendant, witness and Clark then went to Dale and waited more than an hour for Lamson, who failed to meet them. Defendant was an orphan, seventeen years old.

Ed Clark testified, for the defense, that he was present and heard all that was said, and saw all that transpired at the time of the watch trade between defendant and Lamson. Lamson proposed to trade his watch to defendant for a roll of money which defendant had in his hand. When defendant said something about Lamson having no disposition to trade, Lamson said: "Well, if you think so, just put your roll of money in Clark's hand and I will put the watch in Bob's hands." The exchange was made, and Bob Chamberlain delivered the watch to defendant, and witness handed the roll of money to Lamson, who received it at once without protest, and opened it. He then said: "Well, I am bit, but it is a fair trade. I never did make such a trade but what I got bit." Nothing whatever was said about fifty dollars or any other specified amount, nor was anything said about counting the money to Lamson from the hands of the witness. The trade, as proposed by Lamson, was the watch for the roll of money, and the exchange was made in the manner proposed by him. Lamson had a box in his arms at

the time of the trade.   His horse became restive just after wit-
ness handed him the money, and, as he was about to drop the
box, Lamson handed the money back to witness.   Witness rode
off a short distance with it, and when Lamson overtook him,
returned it to Lamson.   Witness then separated from the parties
and did not see them again on that day.

*Storey & Storey,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.   In a criminal case, it is required
that the charge of the court "shall distinctly set forth the law
applicable to the case."   (Code Crim. Proc., art. 677.)   "The law
applicable to the case" has been construed to mean the case as
made by the evidence.   (Hudson v. The State, 40 Texas, 15;
Priesmuth v. The State, 1 Texas Ct. App., 480.)

The sixth subdivision of the charge complained of is as fol-
lows:   "If you find from the evidence that the parties made an
agreement to the effect that the owner of the watch agreed to
sell it to the defendant for the specified sum of fifty dollars; that
the watch and roll of money were to be placed into the posses-
sion of other parties, *and the watch to be delivered after the
money delivered by the defendant had been counted by the owner
of the watch;* and if you further believe, from the evidence, that
money of the represented value of fifty dollars was not delivered
by the defendant; that he acquired possession of the watch and
appropriated it without paying for it, according to the terms of
the ostensible agreement; and that he did so by a false pretense
and device, and with the fraudulent intent to deprive the owner
of the value of the watch, such facts will be sufficient in support
of the offense as charged."   A bill of exceptions was saved to
this paragraph of the charge by the defendant.   We have ital-
icized that portion of it which, it is claimed, is not warranted by
any of the facts proven in the case, viz: "and the watch to be
delivered after the money delivered by the defendant had been
counted by the owner of the watch."

There is no evidence in the record that the agreement was that
the watch should not be delivered *until the owner had counted
the money* delivered by defendant.   Lamson, the injured party,
testified that the agreement was "that Clark should count out
the money to me," and this is the only evidence as to the count-

ing of the money before delivery of the watch found in the record. Now, it is in proof by all the witnesses that the watch was delivered before the money was counted by Lamson. Under the charge of the court, the delivery of the watch before Lamson counted the money would be both wrongful and unlawful, as would also have been its possession by defendant—the condition precedent not having been complied with. This was making the illegality and wrongful possession by defendant depend upon a different circumstance, contract or condition to the one stated by the witness as that agreed upon by the parties. We can not say how far this error in the charge was calculated to injure the rights of the defendant. It was not warranted by the case as made by the proofs, and it was promptly excepted to at the time by defendant, because there was no evidence to support it. (Code Crim. Proc., art. 686.)

The other matters complained of are of a character not likely to arise upon another trial. For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*