### Bob Rhea v. The State.

#### No. 1458. Decided June 19, 1912.

**1.—Murder—Continuance—Sick Witness.**

Where, upon trial for murder, the evidence showed that a knife was found near deceased which appellant testified deceased held in his hand while advancing on him, and deceased's wife testified that she had never seen her husband with said knife, and defendant applied for a continuance on account of the absence of his wife who could not attend court on account of her advanced pregnancy, and the affidavit of the motion for new trial showed that the absent wife would have testified that the knife did not belong to defendant, and it appeared from the record that the deceased owned a knife, the motion for continuance and new trial should have been granted.

**2.—Same—Evidence—Motion for New Trial—Animus of Defendant.**

Where, upon trial for murder, a State's witness testified as to a declaration by the defendant showing his animosity toward the deceased, and that the same was made in the presence of a witness who attached his affidavit to the motion for a new trial and swore that no such statement was made in his presence, and

the defendant had also denied making such statement, the motion for new trial should have been granted.

**3.—Same—Motion for New Trial.**

Where the wife of defendant attached her affidavit to the motion for new trial swearing that the knife found near deceased did not belong to her husband, and that the parties were on friendly terms, both of which facts the State's testimony controverted, a new trial should have been granted, it being shown that the wife could not attend trial on account of sickness.

**4.—Same—Charge of Court—Actual Attack.**

Where, upon trial for murder, the evidence showed an apparent attack by the deceased upon the defendant, the court should have instructed the jury accordingly instead of charging upon actual attack.

**5.—Same—Evidence—Declarations by Third Party.**

Where, upon trial for murder, the State showed that a certain statement was made in the presence of defendant just after the shooting, to which defendant made no reply, and the defendant denied hearing such statement, the court should have instructed the jury that if the defendant did not hear such remarks they would not consider same.

**6.—Same—Depositions—Continuance—Temporary Disability of Witness.**

Where, upon trial of murder, the defendant applied for a continuance on account of the advanced pregnancy of his wife, who was an important witness, such was the correct practice, instead of procuring her depositions.

Appeal from the District Court of Hill. Tried below before the Hon. C. M. Smithdeal.

Appeal from a conviction of murder in second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*A. P. McKinnon* and *C. F. Greenwood,* for appellant.—On question of the court's charge on actual attack by deceased: Dodson v. State, 34 Texas Crim. Rep., 566; Phipps v. State, id., 609; Terry v. State, 45 id., 264; Crockett v. State, id., 276; Poole v. State, id., 348; Burnett v. State, 46 id., 116; Bearden v. State, id., 144; Dyer v. State, 47 id., 253.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with murder, tried and convicted of murder in the second degree and his punishment assessed at twenty years confinement in the State penitentiary.

When the case was called, appellant filed his first application for a continuance, alleging that he had his wife duly subpoenaed, and that she was in a delicate condition on account of being in an advanced state of pregnancy. To this application he attached the sworn certificate of Dr. Frank M. Douglass, who certified that he had examined Mrs. R. F. Rhea (appellant's wife) and found her according to history of case and information gained by physical examination to be in the last month of gestation or pregnancy, and he considered it unsafe for her to appear in court as a witness. We have carefully read the state-

ment of evidence expected to be proven by her, and in the light of the entire record we think her evidence would be very material. A knife was found near deceased; appellant testified deceased was advancing on him with a knife at the time he shot. Mrs. Lewis, wife of deceased, testified she had never seen her husband with a knife, and upon being handed the knife found by deceased's body, stated she had never seen her husband with that knife. Appellant states that she desired to prove by his wife that the knife found by appellant did not belong to appellant and states she would so testify. This was a vital issue in the case, and if the State was going to use the wife of deceased to prove that the knife did not belong to deceased, appellant was entitled to have his wife present to testify that the knife did not belong to him. Appellant states other material facts he expects to prove by her. Another circumstance in the case, Mrs. Lewis testified that she had never seen her husband with a knife of any kind. Appellant, in his motion for a new trial, attaches the affidavit of J. M. Campbell, who swears that he knew deceased; that in December prior to the killing in January, he traded for a pocketknife with deceased, and at that time deceased owned and had in his possession two knives; that he had never told appellant or his attorney about this matter before the trial, but he had so testified before the grand jury. A member of the grand jury testifies that Mr. Campbell did so testify before the grand jury, but he did not describe the knife found by the body of deceased, as being one of the knives in possession of deceased in December. As the State was contending that deceased owned no knife this would be material testimony.

On the trial of the case Dr. Young, a veterinary surgeon, testified that on Saturday before the trial in front of the ten pin alley in Hillsboro, he heard defendant remark: "I am Bob Rhea; I killed a son-of-a-bitch at Itasca." Dr. Young says Dr. Roberson was present and told appellant to be quiet. Appellant in his testimony denied making any such statement. On the motion for a new trial, he shows that at the time of the trial Dr. Roberson was absent from Hill County and did not return until after the trial, and Dr. Roberson swears that no such statement was made in his presence and hearing. That appellant was talking to him at the time and what appellant did say was in substance, "when a man got in trouble it looked like everything went against him, and that a son-of-a-bitch of an officer had arrested him that day. That appellant was not talking about deceased, Steve Lewis, at all." This testimony would have been very material as all the evidence shows that appellant and deceased were neighbors, and their families visited, and they apparently were on good terms until a few moments before the homicide. This testimony of Dr. Young was about the only testimony which would indicate animosity on the part of appellant toward deceased at the time of and prior to the killing.

Attached to the motion for new trial is the affidavit of Mrs. Rhea, his wife, who swears that she is expecting to be confined during that

month; that the knife found near deceased did not belong to her husband; that deceased and appellant were on friendly terms, and the families daily visited each other. She further states facts, which, if believed, would account for appellant being armed at the time of the killing, wholly consistent with his contention. Taking all this into consideration we think the continuance should have been sustained or new trial granted.

Appellant testified to deceased cursing him on the evening of the difficulty, and that Mr. Worley asked deceased to leave the restaurant, when deceased told appellant if he would come out "he would settle it" with him—they having had some words about money matters. Appellant further testified that he declined to go outside, and when he told deceased he would not go out, that deceased jerked the door open, drew his knife, and started back in saying, "We will settle it now;" that when deceased started towards him with the knife, believing that deceased would cut him and kill him, he drew his pistol and fired. The court in his charge instructed the jury that if they believed that "deceased had made an attack on defendant," from which it reasonably appeared to defendant that his life was in danger, or he was in danger of serious bodily injury, he would be justified in shooting. Appellant insists that his testimony did not show an actual attack had been made, and the jury were misled by the charge in that they were led to believe that appellant would not be authorized to defend himself until he was actually attacked. Upon another trial the court should instruct the jury that if deceased had attacked defendant, or it reasonably appeared to him, from his standpoint, that deceased was about to attack him, he would have a right to defend. It is the law of this State that a person has the right to act, if from the acts or conduct of deceased, it reasonably appeared to him that a deceased person was then and there about to attack him, as well as if the attack had actually been made.

Appellant reserved a bill of exceptions to the witness Hollis Campbell being permitted to state that just after the shooting he heard John Worley say to the appellant, "What in the hell do you mean, Bob." Worley, when placed on the stand by defendant, denied using this language, but says he remarked, "What do you mean." The evidence shows defendant made no reply. Defendant denies hearing Worley make any statement, or that Worley asked him any question. Campbell, Worley and the appellant are placed, by the evidence, in such close proximity to each other, the court did not err in admitting the testimony, for if either of the questions were asked and the defendant heard them, they were such as to elicit an answer from defendant, and his failure to respond was legitimate matter to go before the jury. But as the defendant, in his testimony, positively denied hearing Worley make any remark, or ask any question, the court, in his charge, should have instructed the jury that if they, from the evidence, believed beyond a reasonable doubt he heard the exclamation, or ques-

tion, it could be considered by them in passing on the evidence, but if they did not find he heard such remark, or had a reasonable doubt thereof, they would not consider this matter for any purpose.

There are a number of other grounds in the motion for a new trial, but as they will not likely occur on another trial, we will not discuss them. For the errors above pointed out the judgment in this case is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

June 19, 1912.

HARPER, JUDGE.—The State has filed a motion for rehearing in this case and earnestly insists that we were in error in holding that the court erred in overruling the application for a continuance. We have studied the record again, but we can not agree to the proposition that it was the duty of appellant, knowing that his wife was in such condition that she could not attend court, to have taken her deposition. Mr. Wharton, in his Law of Evidence (section 179) says: "The rule is laid down by Lord Ellenborough that where a witness is taken ill, the party requiring his testimony should move to put off the trial, as it is less open to objection and abuse. It is, of course, in such cases, a conflict of conveniences; but in criminal trials, where the objection to secondary evidence is peculiarly strong, it has been ruled that the deposition of a woman, who was so near her confinement as to be unable to attend trial, could not at common law be received." It is only permanent illness that renders the testimony admissible. And if appellant had taken the deposition of his wife, and the State had objected and shown the sickness was only temporary, the court would properly have sustained the objection; therefore, appellant was not lacking in diligence when it was shown that a subpoena had been issued and served, and that she was so close to her confinement that she could not attend court. He followed the advice of Lord Ellenborough, and moved to postpone the case, and this has always been held ground for a continuance on the first application when the testimony is material.

The motion for rehearing is overruled.

*Overruled.*

Davidson, Presiding Judge, not sitting.