HERVEY KING v. THE STATE.

No. 6469. Decided November 23, 1921.

1.—Intoxicating Liquors—Possession—Grand Jury—Indictment.

Where the indictment was returned at the May term of the District Court, which began on the second day of that month, and it appeared from the record that at a previous term of the court jury commissioners were duly appointed, and returned to the clerk in due time, the names of the persons selected as grand jurors for said May term, but the envelope containing this list was not opened until the 23d day of May, under the ex-

press direction of the judge, and it was shown that the grand jurors possessed the qualifications required by law, there was no reversible error. Distinguishing Woolen v. State, 68 Texas Crim. Rep., 189.

**2.—Same—Insufficiency of the Evidence—Possession—Burden of Proof.**

Upon trial of the unlawful possession of intoxicating liquors, it is contemplated by the statute that to authorize a conviction there should be proof that the accused had actual, personal care, control and management of the intoxicating liquor, and where in the instant case, in which the evidence was wholly circumstantial, this requirement of the statute was not fulfilled, the verdict of guilty was unwarranted; particularly so in view of the amendment of the statute upon which the conviction was founded, where the possession can only become unlawful if the intoxicating liquor was held for the purpose of sale, and the burden of proof is on the State.

Appeal from the District Court of Harrison. Tried below before the Honorable P. O. Beard.

Appeal from a conviction of the unlawful possession of intoxicating liquor; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Bibb & Caven,* for appellant.—Cited: Woolen v. State, 150 S. W. Rep., 1165; Mayfield v. State, 151 id., 303; Whiten v. State, 151 id., 1183.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for the unlawful possession of intoxicating liquors; punishment fixed at confinement in the penitentiary for a period of one year.

The legality of the organization of the grand jury which found the indictment is attacked. The indictment was returned at the May term of the District Court, which began on the second day of that month. At the previous term, jury commissioners were duly appointed and returned to the Clerk of the District Court, in due time, the names of the persons selected as grand jurors for the May term. The envelope containing this list was not opened until the 23rd day of May, the failure to do so being by the express direction of the district judge in pursuance of the prevailing custom to defer summoning a grand jury until such time as the presiding judge might determine that a grand jury would be organized for the particular term of court. The indictment was returned on the 13th of June following. To require so strict an adherence to the procedure prescribed by statute as would be involved in sustaining appellant's point would exalt form above substance to an unwarranted degree. The grand jury that found the indictment was selected by jury commissioners duly appointed in accordance with Article 384 of the Code of Crim. Procedure. They were notified, sworn, instructed, kept free from intrusion, and selected the persons to serve on the grand jury in accord with other provisions of Title 7, Chap. 1, of the Code of Crim. Pro-

cedure. The list of names of the persons selected was duly put in possession of the clerk and oath administered to the clerk. The grand jurors possessed the qualifications required by law, but the clerk did not open the envelope at the time prescribed by Article 395 of the statute, which directs that within thirty days of the term, and not before, the envelope containing the list should be opened and certified by the sheriff. Other provisions provide for the summoning by the sheriff before the beginning day of the term. Art. 399 provides that if there should be a failure to select the grand jury, the sheriff, upon a writ issued by the court, may select and summon persons who may organize as a grand jury.

In Woolen's case, (68 Texas Crim. Rep. 189) the court held under the facts there developed that there had been such disregard of the statutory provisions relating to the organization ·of the grand jury as to vitiate the empaneling of the grand jury that found the indictment against Woolen. In that case, instead of naming the jury commissioners to select the grand jury at the succeeding term, the district judge, at the November term, 1911, caused the jury commissioners to select grand jurors for the January, March and May terms, 1912. The indictment against Woolen was found by the grand jury organized under this order at the March term, and on appeal, it was held that the motion to quash should have been sustained. The essential distinction between the facts then before the court and those now under consideration is that the grand jury, at the March term, was not selected by commissioners, appointed at the preceding term, but was selected by commissioners appointed long in advance of the meeting of that term. The importance of the selection of the grand jury by commissioners appointed in accord with the law, in our opinion, far transcends the importance of summoning them at a particular time. In the one case the substance of the law is that the commissioners shall be duly selected at the preceding term, while in the other it is that the list shall be preserved and cared for in accord with the statutory requirements, and that the grand jury shall be summoned at a time enabling the court to organize them for service at 'the succeeding term. Doubtless, if there resulted from the intentional disregard of the statute some distinction in the personnel or the number of grand jurors selected by the commissioners, it might be plausibly argued that injury resulted from the failure to follow the statute, but such condition does not appear, when, as in the instant case, there is no contention that the grand jurors selected by the commissioners did not attend nor that any result unfavorable to the accused or to the public could have resulted from the delay in opening the list and summoning the grand jurors. With the limitations suggested, we think the sound rule is that the time of summoning the grand jurors or opening the list is directory, and that a deviation from it which cannot be harmful does not vitiate the organization of the grand jury

nor its action in finding the indictment. Cyc. of Law & Proc., vol. 20, p. 1309; Cyc. of Law & Proc., vol. 22, p. 192.

The evidence is exceedingly meager. It consists of testimony of the sheriff that he got two quarts of whisky out of a buggy which was standing on the street. Appellant was not in the buggy. The horse hitched to the buggy was tied to a telephone pole. Inferentially, it appears that appellant was the owner of the horse and buggy. The buggy was on the street, and appellant was about fifty yards distant. He made no claim of the whisky so far as the evidence discloses and introduced no evidence upon the trial.

The evidence of guilt, which is wholly circumstantial, does not, in our opinion, fulfill the requirements of the law. It is contemplated by the statute that to authorize a conviction there should be proof that the accused had actual personal care, control and management of the intoxicating liquor. In the instant case, two quarts of liquor were found in a buggy belonging to appellant, but whether appellant had driven the buggy and whether he or some other person had put the whisky in the buggy are essential matters not disclosed by the evidence. No presumption or inference adverse to the appellant could arise from the absence of evidence which apparently was available to the state. If appellant at the time was in control of the buggy, or had driven it to town, no reason is given why the fact could not have been proved by the state. In the state of the evidence as we find it, the hypothesis that some other person had control of the buggy or was responsible for the presence of the liquor is not sufficiently overcome. We, therefore, believe the verdict unwarranted. Particularly is this true in view of the amendment to the statute upon which the conviction is founded. Formerly, the possession of intoxicating liquors, except for medicinal, mechanical, scientific or sacramental purposes, was unlawful, and the burden was upon the accused to establish that his possession was lawful. Roberts v. State, 90 Texas Crim. Rep., 133 (No. 5970); not yet reported. Under the amendment, (Chap. 61, Acts of the Thirty-seventh Legislature, First Called Session), the possession becomes unlawful only when for the purpose of sale, and the burden is upon the state to allege and prove that the possession was for such purpose. We find in the record no evidence that would lead to a satisfactory conclusion that the appellant possessed the liquor for the purpose of sale.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*