### ARNOLD POWELL v. THE STATE.

No. 8585.   Delivered November 19, 1924.

Appeal dismissed February 18, 1925.

#### 1.—Murder—Courts—Changing Terms—Grand Jury—Not Affected by.

Where a grand jury was drawn for the July term of the district Court, of Coryell County, and subsequently by a legislative enactment the July term of that court was changed to September, such grand jury so drawn was properly empaneled at the September term of said court, and the validity of an indictment returned at said September term, by said grand jury is sustained.

#### 2.—Same—Grand Jury—Validity of—How Attacked.

It is too late, in a motion to quash the indictment, to make any objection to the qualifications of a grand jury, or to the legality of a grand jury, after it has been empaneled and sworn.   See opinion in this case for an exhaustive discussion, and citation of authorities on this question.   Following Kemp v. State, 11 Tex. Crim. App. 174 and other cases cited.

#### 3.—Same—Challenge of Grand Jury—Exception to General Rule.

An exception to articles 409 and 570 will be found where the accused has been arrested or the offense has not been committed at the time of empanelling the grand jury which returns the indictment against him.   In such case it has been held that accused may by a motion to quash, take advantage of the same grounds which have been available to a challenge to the array. See Robinson v. State, 92 Tex. Crim. Rep. 527-244 S. W. 599 and other cases.

#### 4.—Same—District Court of Coryell County—Changing Term of.

The act of the Legislature, changing the term of Court in Coryell County, provides: "All writs and processes returnable to said court, at the terms and times now fixed by law shall be returnable at the terms and times fixed by this act, and shall be valid." The words "writs and processes" used in the law referred to is sufficiently comprehensive to include the grand jury, legally drawn for the July term of said court, and to make them available for the September term under the new law.

#### 5.—Same—Change of Venue—On Court's Own Motion.

Where a court on his own motion changes the venue of a cause and sends it to another county to be tried, as was done in this case, such action of the court will not be disturbed in the absence of a showing of injury, or other abuse of the judicial discretion vested in the trial court.   See Art. 626, C. C. P.

#### 6.—Same—Evidence—Admissibility of Conversation—Cured by Charge.

Where a conversation took place between the deceased, and the witness, under circumstances making it very probable that it was heard by appellant, such conversation, having a material bearing upon the motive of appellant, in killing the deceased, the error, if any, in admitting the testimony was cured by a charge of the court that same should not be considered by the jury for any purpose, unless they believed from the evidence, beyond a reasonable doubt, that the appellant did hear the conversation.

#### 7.—Same—Statements Made After Arrest—Admissible—When.

Where appellant testified in his own behalf and had gone into details as to the trip that ended in the homicide, as well as all of the details of what occurred at the place of the killing, it was permissible to permit the sheriff, in rebuttal to testify as to the conduct and statement of appellant while under

arrest, at the point where the killing occurred, to which place he had been taken by the officer. Appellant himself having brought the matter into the record, the state was entitled to bring out the entire transaction introduced by appellant.

**8.—Same—Special Charges—When Argumentative—Properly Refused.**

Where special charges are requested that are argumentative in their nature, and upon the weight of the testimony they were properly refused. The court gave a full and correct charge of appellant's theory of self defense, and it was unnecessary to give the special charges requested.

**9.—Same—Motion to Dismiss Appeal—Escape of Appellant—Granted.**

A motion for rehearing was filed herein, on December 2, 1924. The State files a motion to dismiss the appeal on the ground of the escape of the appellant on the night of December 4, 1924. The motion is granted, and the appeal is ordered dismissed.

Appeal from the District Court of Comanche County. Tried below before the Hon. J. R. McClellan, Judge.

Appeal from a conviction of murder; penalty, confinement in the penitentiary for life.

The opinion states the case.

. *T. R. Mears, J. D. Brown, Jr.,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for murder, with punishment assessed at confinement in the penitentiary for life.

Appellant was charged with the murder of R. A. Jackson. Deceased had a small picture show outfit and traveled in a Ford car, going to small places and communities in the country, putting on shows at school houses and other places where he could obtain permission. About June 1st, deceased was at Belcherville, in Montague county. at which time he was traveling alone, and at that point made arrangements with appellant to travel with him and assist him in the operation of his show. Appellant was to receive as compensation twenty or twenty-five dollars per month and his expenses. After visiting a number of small places in west Texas, the two parties arrived at Purmela, a village in Coryell county. There was no hotel at this place and appellant and deceased secured a room at the private residence of Mr. and Mrs. Hagan. On Saturday morning appellant and deceased went from Purmela to the small town of Pearl in the same county, to make arrangements to show there. They returned to Purmela and put on their show Saturday night and early Sunday morning left with the picture show outfit for the town of Pearl. The road traveled by them led through various pastures, crossing Cowhouse creek at what is known as the Bertrand crossing. The body of deceased was discovered on Monday at this crossing. The body had been dragged from a point

where blood was found upon the rocks some distance and was hidden in the weeds and undergrowth. The car in which they were traveling was traced to the city of Waco, where it had been abandoned by appellant and some nineteen dollars in money belonging to deceased had been appropriated by him. The pockets of deceased's clothing had been turned inside out. Appellant defendant defended on the ground that just as they approached the crossing where the body was found they discovered a flat casing and stopped to repair it; that appellant made some complaint because deceased had not secured the proper tools to make the repairs, and that in the conversation which ensued deceased accused appellant of stealing money from him; that in the quarrel which resulted from this accusation, deceased struck appellant, to which he replied with a blow with his fist; that deceased then started to pick up the jack which had been removed from under the car, and appellant, believing that deceased intended to strike him with the jack, picked up a rock and struck deceased on the head, which resulted in his death; that becoming frightened and not knowing what to do, he had concealed the body, driven the car to Waco, where he abandoned it, and appropriated the money, amounting to nineteen dollars and some few cents, which was in a shot sack, on the front seat of the car. He denied having rifled deceased's pockets after the killing. Appellant went to Oklahoma, where he enlisted in the army. He was transferred to San Antonio, at which point he was arrested about two months after the killing. We do not think a more extended statement of the facts called for.

The matter complained of in bill of exception No. 1 arises upon motion to quash the indictment. Prior to an act of the 38th Legislature the district court of Coryell county convened regularly on the 2d Monday in January and July of each year. During the session of the 38th Legislature bills were introduced in both the Senate and House providing that there should be three terms of district court in Coryell county which should convene on the 1st Monday in January, May and September. The Senate bill passed both Houses and went into the hands of the Governor. Some dissatisfaction having arisen with reference to the change in the terms of court, the Governor, at the request of the author of the bill, vetoed it. At the January term of court under the then existing law, the district judge appointed jury commissioners which selected grand jurors for the term of court which was to convene in July. At the proper time. the clerk of said court opened the list of grand jurors, and they were summoned. The judge regularly convened the July term and impaneled a grand jury. After court had been in session for a week it was ascertained that in the closing hours of the 38th Legislature, the House bill providing for a change in the court in Coryell county had been passed, concurred in by the Senate, gone to the

Governor, and had by him been transmitted to the Secretary of State, and had become a law without the Governor's signature. Neither the district judge nor any officers of the court knew that this had happened and were not advised that a law had gone into effect which abrogated the July term of court until after the judge had attempted to hold that term for a week. When notice of these matters came to the judge, he, believing that all acts undertaken to be done at such July term were invalid, discharged the grand jury, directed the clerk to re-seal their names and to open the re-sealed envelope at the proper time and have them summoned for the September term of court, which was the next regular term after said new law became effective. The purported July term of court was discontinued, and court was regularly convened on the first Monday in September under the provisions of the new law. The grand jurors having been re-summoned for that term, were impaneled. It was this grand jury which returned the bill of indictment against appellant, and for the reasons heretofore stated he sought to attack the legality of said grand jury by motion to quash the indictment. That a grand jury composed of twelve men had been impaneled at the September term and functioned as a grand jury is not questioned. The attack goes to the organization and the manner of selecting as disclosed from the foregoing statement. In Newman v. State, 43 Texas, 525, the court, speaking through Chief Justice Roberts, uses this language:

"It seems to be the resign of our code to cut off all objections to the organization of the grand jury unless they are made in the challenge allowed at the time of its organization, or comes strictly under the motion allowed to set aside the indictment after it is found by the grand jury."

Prior to the announcement in this case the principle had been given effect in State v. Vahl, 20 Texas, 779; Johnson v. State, 33 Texas, 570; Hudson v. State, 40 Texas, 12. Other cases will be found collated in the notes under Article 409, of our Code of Criminal Procedure, among them being Doss v. State, 28 Texas Ct. App., 506; Reed v. State, 1 Texas Ct. App., 1. The question came up in Kemp v. State, 11 Texas Ct. App., 174. The attack upon the indictment in that case was based upon the following grounds; that the persons composing the grand jury were not selected by the jury commissioners for the term of court at which they found the indictment; that the list was not certified by the jury commissioners as required by law; that the envelope which contained the list was not properly indorsed; that the clerk had opened the envelope more than thirty days prior to the meeting of court; that the grand jury was summoned by a person unauthorized by law; and that one member of the grand jury was one of the State's principal witnesses in the prosecution against accused. The plea against the indictment was over-

ruled.  We quote from the opinion in the Kemp case, inserting
brackets after the number of the articles referred to in that opinion
the present number of the same articles.

"Aside from the statement appended by the presiding judge to
the bill of exceptions to his ruling on the plea, which appears to
explain in a very satisfactory manner the objection to the grand
jury, the opening of the envelope, and the official capacity of the
officer who summoned the grand jury, and the like, we are of opin-
ion the correctness of the rulings of the judge on the plea must
be determined and stand or fall by a proper interpretation and appli-
cation of several articles of our Code of Procedure as we find them
to be since the last revision, and which were in force at the time
of the trial on the plea in question.  By article 376 (now 408) it is
provided that when twelve qualified jurors are found to be present
the court shall proceed to impanel them as a grand jury, unless a
challenge is made, which may be to the array or to any particular
individual presented to serve as a grand juror.  The next suc-
ceeding article directs the time and manner of making a challenge,
and succeeding articles prescribe causes of challenge to the array
or to an individual grand juror.

"In order that we may be fully understood we quote the language
of the several articles. 'Art. 377 (now 409). Any person, before
the grand jury has been impaneled, may challenge the array of
jurors or any person presented as a grand juror, *and in no other
way shall objections to the qualifications and legality of the grand
jury be heard.*  Any person confined in the jail of the county shall,
upon his request, be brought into court to make such a challenge.
Art. 378 (now 410).  By the array of grand jurors is meant the
whole body of persons summoned to serve as such, before they have
been impaneled.  Art. 379 (now 411).  A grand juror is said to be
impaneled after his qualifications have been tried and he has been
sworn.  By the word 'panel' is meant the whole body of grand
jurors.  Art. 380 (now 412).  A challenge to the array shall be in
writing, *and for these causes only.*  1.  That the persons summoned
as grand jurors are not in fact the persons selected by the jury
commissioners.  2.  In case of grand jurors summoned by order of
the court, that the officer who summoned them has acted correctly in
summoning any one or more of them.  Art. 381 (now 413).  A
challenge to a particular grand juror may be made orally and for the
following causes only: 1.  That he is not a qualified grand juror.
2.  That he is the prosecutor upon an accusation against the person
making the challenge.  3.  That he is related by consanguinity or
affinity to some person who has been held to bail, or who is in con-
finement upon a criminal accusation."  It will be noticed that the
language of these articles differs from corresponding articles of the

Code as in force prior to the revision, and it seems that article 401 of the old Code, (Pasc. Dig. Art. 2368) has been entirely omitted from the revision, and is no longer in force. We are of opinion, however, that the substance of the omitted article is virtually embraced in the enlarged provisions we have quoted, as will be apparent by comparing the articles now in force with the corresponding articles of the former Code.

"It will be seen from the articles quoted that there are but two causes of challenge to the array, and, agreeably to Article 380 (now 412), these are the only challenges to the array the law permits. Also, with reference to a particular juror, there are enumerated and specifically named three causes of challenge, to the exclusion of every other, by Article 381 (now 413).

"This is not all. The causes of challenge are not only enumerated, and declared to be the only challenges the law permits either to the array or to an individual grand juror, but the time at which these challenges must be made is limited to a particular stage of the proceedings. They must be made before the grand jury has been impaneled; and, not only so, but the law further declares that in the way here pointed out, and in no other way, shall objections to the qualifications and legality of a grand jury be heard.

"*Hence our conclusions are that the qualifications as well as the legality of a grand jury cannot be questioned after the grand jury shall have been impaneled;* that, if there be any cause of challenge, such cause must be made available in the manner pointed out in the appropriate article, and before the grand jury is impaneled, but not after. The right of a prisoner confined in the jail of the county to make such challenge is limited to the time before the grand jury shall have been sworn. But further, a person so confined is entitled to be brought into court whilst the grand jury is being impaneled only upon his request of that privilege. If he does not make such request at the proper time, he is not permitted to complain afterwards. This is, we are of opinion, the proper interpretation and application of the several articles of the Code. *It is too late to make any objection to the qualifications of a grand jury, or to the legality of a grand jury, after it has been impaneled and sworn.*"

In addition to the articles of our Code of Criminal Procedure referred to in the foregoing quotation we call attention to Article 570, which reads as follows:

"A motion to set aside an indictment or information shall be based on one or more of the following causes, *and no other*:

"1. That it appears by the records of the court that the indictment was not found by at least nine grand jurors, or that the information was not presented after oath made as required in Article 467 (479).

"2. That some person not authorized by law was present when the grand jury were deliberating upon the accusation against the defendant, or were voting upon the same."

The rule announced in Kemp v. State, (*supra*) has been recognized in the following recent cases decided by this court: Robinson v. State, 92 Texas Crim. Rep., 527, 244 S. W. 599; Connelly v. State, 93 Texas Crim. Rep. 295, 248 S. W., 340; Staton v. State, 93 Texas Crim. Rep., 356, 248 S. W., 356; Smith v. State, 260 S. W., 602; Hickox v. State, 95 Texas Crim. Rep., 173, 253 S. W. 823. An exception to the operation of Articles 409 and 570 will be found where accused has not been arrested or the offense has not been committed at the time of impaneling the grand jury which returns the indictment against him. In such case it has been held that accused may by motion to quash take advantage of the same grounds which have been available to a challenge to the array. Robinson v. State, (supra;) Carter v. State, 39 Texas Crim Rep., 345, 46 S. W., 236, 48 S. W. 508, 177 U. S., 442, 20 Sup. Ct., 687, 44 L. Ed., 839; Kipper v. State, 42 Texas Crim. Rep., 613, 62 S. W., 420; McCline v. State, 64 Texas Crim. Rep., 19, 141 S. W. 977. Another exception may be found in decisions holding that the acts of *purported* grand juries composed of more or less than 12 men may be attacked, even after conviction upon the ground that such bodies are not in fact grand juries but attempted to function as such in violation of Article 5, Sec. 13, of the State Constitution. See Lott v. State, 18 Texas Crim. App. 627; Ex Parte Reyonlds, 35 Texas Crim. Rep., 437.

We call attention to the fact that none of the articles of the Code of Criminal Procedure just considered were discussed or referred to in the following cases: Woolen v. State, 63 Texas Crim. Rep., 189, 150 S. W. 1165; Mayfield v. State, 68 Texas Crim. Rep., 276, 151 S. W., 303; King v. State, 90 Texas Crim. Rep., 289, 234 S. W., 1107; Ex parte Clemming, 90 Texas Crim. Rep., 261, 234 S. W., 667; Ex parte Holland, 91 Texas Crim. Rep., 339, 238 S. W., 654; Russell v. State, 92 Texas Crim. Rep., 93, 242 S. W., 93; Saulter v. State, 92 Texas Crim. Rep., 96, 242 S. W., 242; Acuff v. State, 92 Texas Crim. Rep. 548, 244 S. W., 1117. The legality of grand juries were assailed in all these cases, but in many of them the attack was not sustained. A third exception to the application of the provisions of Articles 409 and 570, C. C. P., may be found where the record shows an arbitrary disregard of the statutory provisions relating to the manner of selecting grand jurors, as exemplified in Woolen's and Russell's cases (*supra*.) The instant case falls under none of the three exceptions mentioned, hence we conclude that Articles 409 and 570 have application, and that the attack upon the grand jury by motion to quash the indictment cannot be upheld.

We think the attack upon the indictment may be disposed of upon still another ground. The Act of the Legislature changing the terms of court in Coryell county (38th Leg., Reg. S., Ch. 100) contained this language:

"All writs and processes returnable to said courts at the terms and time now fixed by law shall be returnable at the terms and times fixed by this Act, and shall be valid."

From page 421, Vol. 32, Cyclopedia of Law and Procedure, we quote:

"In a more enlarged signification process includes all the proceedings of any court. As employed in statutes the legal meaning of the word 'process' varies according to the context, subject-matter, and spirit of the statute in which it occurs."

Ruling Case Law, Vol. 21, page 1261, says:

"Judicial process, in its largest sense, comprehends all the acts of the Court, from the beginning of the proceeding to its end."

From Words and Phrases, Vol. 6, page 5644:

"In its largest sense, process is equivalent to procedure, including all the steps and proceedings in a cause from its commencement to its conclusion."

We think the words "writs and processes," used in the law referred to is sufficiently comprehensive to include the grand jury legally drawn for the July term of court to make them available for the September term under the new law. Neither do we think, (even in the absence of other questions discussed) that the opening of the envelope, summoning the grand jurors, and attempted impaneling, in July would render the jurors unavailable for the September term of court. The facts of such attempted use of them in July are such that no presumption of injury should arise, and no actual injury is claimed. King v. State, 90 Texas Crim. Rep., 289, 234 S. W., 1107.

An exception was reserved to the action of the court on his own motion changing the venue from Coryell to Comanche county. The order recites that the "Judge presiding being satisfied that a trial alike fair and impartial to the accused and the State cannot be had in this, Coryell county, Texas," directs the change. The order sets forth in detail the grounds upon which the judge reached the conclusion that a change of venue was proper. The action of the court appears to have been authorized under Article 626, C. C. P. We observe nothing which indicates an arbitrary or whimsical act on the judge's part, but it appears to have been the exercise of sound judicial discretion.

Bills of exception three and four may be considered together as they relate to the same evidence detailed by Mr. and Mrs. Hagan. On Saturday night before the killing appellant and deceased had a

room at the Hagan residence, and were expecting to exhibit a picture at the church after religious services. The Hagans and deceased engaged in conversation on the porch of the Hagan home while waiting for the services at the church to conclude. The Hagans testified that during the conversation:

"Mr. Jackson (deceased) asked where that boy was, (referring to appellant) stating that he could not keep up with him; that he believed that he was an honest old boy, but that he was going to have to get rid of him."

Appellant was not on the porch at the time of this conversation. It was the contention of the State that he heard the statement of deceased which indicated that appellant's services were to be dispensed with, and that this furnished the motive for the killing which occurred the next morning. Appellant objected to the evidence on the ground that the conversation was out of his presence, that he was not a party to it, did not hear it, and that it was as to him hearsay. Of course, if appellant had no knowledge of the statement made by deceased he could not have acted upon it nor been influenced thereby, and it would not be debatable that under such circumstances the evidence would be inadmissible. But an issue of fact arose as to whether appellant did hear the statement and we observe no error upon the part of the court in handling the situation. When appellant interposed the objection the court investigated the matter, and it appears from the record, that immediately after the statement made by deceased, Mrs. Hagan went to the door of the room to be occupied by appellant and deceased for the purpose of arranging the bed or making some other adjustment in the room; she discovered appellant lying on a rug with his head near a window opening on the gallery about eight or ten feet from where the parties had been talking. She stepped back from the door and advised deceased that appellant was in the room. Deceased went to the door and called to appellant, telling him to wake up, to which appellant replied that he was not asleep. Appellant testified that he had been asleep and did not hear the statement made by deceased, but that when Mrs. Hagan opened the door it waked him and that he did reply in response to deceased that he was not asleep at that time. From the proximity of the parties the court concluded that the testimony was admissible, but instructed the jury at the time that unless they found from the evidence beyond a reasonable doubt that appellant heard the statement of deceased testified to by Mr. and Mrs. Hagan they would not consider it for any purpose. Practically the same question arose in Rhea v. State, 67 Texas Crim. Rep., 197, 148 S. W., 578, and the court in the present instance appears to have pursued the course indicated by the opinion in the Rhea case as being the correct solution of the matter. For the same rea-

sons here given we think the court was not in error in declining to withdraw from the jury's consideration the testimony of Mr. and Mrs. Hagan in view of the instructions given to the jury relative to the matter at the time it was admitted.

By bill of exception number five, appellant complains of the testimony given by the sheriff as to the conduct and statements of appellant while under arrest at the point where the killing occurred, to which place he had been taken by the officer. In qualifying the bill the court says that while testifying in his own behalf appellant had gone into details concerning the trip mentioned and had given his version of what occurred at the scene of the homicide, and since appellant had himself brought the matter into the record that in the opinion of the court the State was entitled to bring out the entire transaction introduced by appellant. In view of the court's qualification to the bill his ruling appears to have been correct.

The refusal of the court to give the special charges which is complained of in bills of exception 6, 7 and 9, presents no error. In our opinion they are argumentative in their nature, and upon the weight of the testimony. They seek to group certain testimony criminative in its character and then to break the effect thereof by an instruction that if the jury believed appellant was acting in self-defense at the time he killed deceased that these criminative matters would not impair his right in that respect. The court gave a full and correct charge presenting appellant's theory of self-defense, and it was unnecessary and would have been improper to give the special charges requested.

Finding no errors in the record the judgment is affirmed.

*Affirmed.*

### ON MOTION TO DISMISS.

LATTIMORE, JUDGE.—This case was affirmed in an opinion delivered November 19, 1924. A motion for rehearing was filed on December 2, 1924. The State files a motion to dismiss the appeal on the ground of the escape of the appellant on the night of December 4, 1924, which fact is proven and supported by the affidavit of the sheriff of Comanche county. There is no claim that appellant has voluntarily returned to custody. The only contention made now is that the law giving to the State the right to dismiss an appeal in case of the escape of the accused, is unconstitutional. Appellant contends that to dismiss the appeal deprives him of his constitutional right to have a final determination of his trial by a jury; his proposition, as we understand it, being that until the case is disposed of by a final judgment of this court on appeal, that there has been no final judgment entered. Wt have examined the authorities cited and considered the positions advanced by able counsel for the appel-

lant, but are unable to bring ourselves in agreement with his conclusions. There is no possible question of the right of one who has been convicted of a crime, and whose case is pending on appeal, at any time to withdraw that appeal. It is also true that aside from the right created and given by statute so to do, one has no constitutional right of appeal at all. The statute giving the right to appeal also has the right to prescribe the ways, manner, methods anr means by which such appeal may be taken, and in the absence of the observance of these rules this court will dismiss. The statute created the right to appeal, and may be manifestly prescribe how that right may be forfeited or lost. We are not at all able to agree with appellant.

We find no precedent for our disposition of the matter at this time. The judgment has been affirmed. Appellant, by his motion for rehearing, is seeking to set aside that judgment. Art. 912 of our C. C. P., provides that if the defendant, pending an appeal in a felony case, shall make his escape from custody, the jurisdiction of the Court of Criminal Appeals shall no longer attach in the case. It occurs to us, reasoning by analogy and from principle, that our only jurisdiction in the matter at this stage is to dismiss the appeal as though no judgment had ever been entered. The only thing we can do is to enter an order evidencing a relinquishment of further jurisdiction.

The motion to dismiss the appeal will be granted.

*Motion to dismiss granted.*