## H. G. STEWART V. THE STATE.

No. 16841.   Delivered June 27, 1934.
Rehearing Denied October 17, 1934.
Reported in 74 S. W. (2d) 1003.

The opinion states the case.

*W. M. Futch* and *J. P. Rutherford, Jr.,* both of Henderson, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for possessing intoxicating liquor for purposes of sale; punishment, one year in the penitentiary.

Appellant ran a tourist camp with some fourteen cabins, one of which he occupied as a residence, and at another place in which he had what is variously called a cafe, bar-room, beer garden and store, in which latter place he sold beer, etc. For some reason, according to the testimony, officers had frequently been called on to raid this place. Some days prior to the date of the search and finding of the whisky, possession of which is here charged, officers went to appellant's camp. There appears to have been a space left between each of the cabins comprising the tourist camp, which space was large enough to hold a car. On the occasion of said former search the officers here testified that they found in the car space between the cabin occupied by appellant and the next cabin to that one, a cache, which the witnesses in this case referred to several times as a "stash." Appellant was present when this "stash" was found. The officers testified that it appeared to have been dug that day. The dirt was fresh. However examination of the "stash" disclosed the fact that it was empty of any liquid contents, and evidently was not removed or taken away by the officers. It consisted of a box with a container in it and was covered with a syrup bucket lid, etc.

On the occasion in question some of the officers came back to search appellant's tourist camp. Appellant was in the little store or beer garden observing what the officers were doing. After looking through various cabins, said officers discovered such evidences at a point some thirty or forty yards from the cabin occupied by appellant, they sent a man for a shovel. One of the officers testified without objection that he had had a great deal of experience along that line, and that when you got close to where the stuff was these fellows would go to walking, and he observed appellant walking, and so he told the man who went after the shovel to bring appellant along too. He said he did not know what appellant might do, and wanted to keep him in case they should find anything. Digging with the shovel at the point indicated, the officers found a "stash" containing six half gallon jars of whisky. It appeared to be in a box covered with a syrup bucket, having a lid over it and a glass,—very similar, if not identical, to the one observed by them on their visit a few days before. One of the officers testified that questions were asked appellant by one of the deputy sheriffs, Mr. Thurman,—about him moving his stash, but appellant shook his head and did not say anything. Referring to the same matter later, this witness said when Deputy Sheriff Thurman made that remark appellant grinned and shook his head. The officers testified that a trail went from appellant's beer garden to the cabin in which he was staying, and that a plain trail went from said cabin down to this stash where the whisky was found. While there were a number of other cabins making up the entire camp, some of which the officers said appeared to be occupied, there was no trail going from any of them down to the place where this stash of whisky was found. None of the occupants of the other cabins appeared or disclosed any uneasiness or watchfulness as the officers approached the place. There is nothing in the record to suggest ownership or possession of the whisky in any of the transient people occupying any of the other cabins, if such there were at the time.

A somewhat significant fact appears also in that when the officers took appellant and the six half gallon jars of whisky to Overton and put both of them in confinement there, the whisky was placed at a point some five or six feet from the jail door while appellant was put in a rear cell. The officers went away, but coming back later they found that the whisky jars had been broken by halves of brick bats which lay near the jars. Examination of the outer door of the jail disclosed that

the brick bats had been pushed through the bars of said door, there being evidence on the door of their passage. Evidently some one had pushed the brick bats through the door from the outside and broken the whisky jars with same. The wife of appellant appeared at the Overton jail referred to shortly after the return of the officers. It was impossible from the situation for appellant to have himself personally broken the jars of whisky, but nothing indicates that he could not have communicated with his wife or any other person on the outside.

Appellant has nine bills of exception. Bill 1 complains of the refusal of a peremptory charge; No. 2 complains of a statement by the assistant district attorney to the jury in argument wondering why appellant's wife did not take the stand; No. 3 complains of argument of the same assistant district attorney, who referred to the fact that the "stashes" found on the two trips of the officers to appellant's tourist camp were the same stashes; the next bill complains of a statement of the district attorney, which sets forth that while arguing the case he turned to the appellant and said "Boy you laugh, but you know I'm right don't you?" this being complained of as a reference to the failure of the defendant to testitfy; the next bill complains of argument of the district attorney, but same is so qualified by the court as to make it manifest no error; the next bill complains of the following language used by the district attorney: "When a crazy ape runs amuck in an automobile and kills and injures women and children, I can justify this law." We are not quite able to appraise any possible harm to appellant under the facts of this case from such statement, even if it be not a discussion applicable to the facts appearing. The next bill complains of argument of the district attorney wherein he attributed to a witness the statement: "Bill, they found your whisky," and that appellant answered "Yes." This is complained of as a mis-quotation of the testimony in that the record shows the witness said "Bill, they found it," and that appellant said "Yes." The bill is also qualified to state that the district attorney was drawing deductions and conclusions from testimony introduced. The next bill of exceptions also complains of a statement like the one above referred to in that the district attorney referred to the two stashes found on separate visits, as the same. The last bill of exceptions complains of a matter similar to one above set out, in that the district attorney asked "Why didn't appellant's wife take the stand, why does she stay silent instead of helping Bill, why did she stop helping him?" We

have examined each of the matters set up in these complaints and do not find any of them to present such error as to call for reversal. We think the evidence to show appellant in possession of the whisky in question, and the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant's motion for rehearing is predicated upon the contention that we were in error in holding the evidence sufficient to support the conviction. In view of appellant's insistence we have again examined the statement of facts carefully. In our original opinion we called attention to the fact that at the time of a former search there was found between the cabin occupied by appellant and the one next to it a "stash," which from the description, would justify the jury in concluding that it was the same one found by the officers at a different place at the time of the present search. The location of the "stash" which was discovered formerly is one of the strongest circumstances supporting the State's contention that the "stash" and contents found the last time belonged to appellant. We quote the testimony of the officer regarding the location of the "stash" at the time of the former search. "* * * Mr. Stewart kept his car parked in his driveway and that stash was right between his cabin and the next cabin at a place *right where his car stood between the two cabins.* * * * The place we found that stash was between two cabins, one of which was occupied by Mr. Stewart, but I don't think anybody occupied the next cabin. That cabin was empty and the stash was empty."

It is not likely that anyone else would have planted a cache for whisky at a point which would ordinarily have been under the standing car of appellant.

In view of the entire record we conclude that we would be unauthorized to disturb the jury's finding on the facts.

The motion is overruled.

*Overruled.*