PAUL A. PETERS V. THE STATE.

No. 21441. Delivered February 12, 1941.
Rehearing Denied June 4, 1941.

The opinion states the case.

*Nat Gentry, Jr.*, and *Lasseter, Simpson, Spuriell & Lowry*, all of Tyler, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State, on submission.

GRAVES, Judge.

Appellant was by the court convicted of the possession, for the purpose of sale, of gin, wine and intoxicating liquors in a dry area, and was sentenced to pay a fine of $750.00.

The evidence shows that under a search warrant an inspector of the Liquor Control Board, in company with the sheriff's department, appeared at the appellant's residence and exhibited their warrant, appellant not being present at such time; that the wife of appellant gave them the key to the basement of the house, and they entered the basement and found enough intoxicating liquor to have stocked a liquor house. The record shows they found 811 quarts of various brands of wine, 85 pints of Vins wine, 49 pints of gin, 5 25/32 quarts of liquor,

38 cases and 2 cans of Druery's beer, and 5 cases of Schlitz beer.

There is but, one bill of exceptions found in the record, and that relates to the affidavit for a search warrant, which affidavit is contended to be fatally defective in that same is alleged to show upon its face not to have been made upon probable cause.

This warrant was issued for the purpose of a search of a private residence, and the affidavit therefore was subject to the rules and statutes requiring the affidavit to show upon its face probable cause for the issuance of a warrant. We note that in the beginning of such affidavit we find, in substance, that the affiants upon their oaths say that: "A certain private dwelling located in Smith County, Texas, described as (a) A private residence located at 724 South Kennedy St. Tyler, Smith County, Texas and all outbuildings and automobiles appurtenant thereto x x x and being the premises of Paul A. Peters and in the custody and control of Paul A. Peters x x x is a place where alcoholic beverages are unlawfully possessed, sold, manufactured, kept and stored in violation of the provisions of the Texas Liquor Control Act, x x x Affiants were informed this date by reliable citizens of Smith Co. that alcoholic beverages containing alcoholic excess of one-half of one percent by volume were being kept, stored & sold in violation of law, on the above described premises x x x."

The contention made by appellant being that the phrase "were being kept, stored," etc., is or was vague, indefinite and uncertain, and relates to something in the past and not to present conditions, and is insufficient to show a present probable cause for the issuance of a warrant to search a private dwelling.

It is apparent that the affiants are attempting to set forth the information received by them on that day in their own language and interpretation of what had been told them, and not in the exact words of their informers. That the phrase "were being kept" could readily be inferable to the informers' statement so made to them, and would be used interchangeably with the phrase "are being kept." We find that many of our own decisions, in matters of this kind, do use such phrases interchangeably as will be seen in the following quotation from Cordona v. State, 31 S. W. (2d) 452:

"Giving full effect to appellant's contention, the affidavit is

sufficient as a basis for a search warrant if it alleged the residence to be a place where intoxicating liquor *was* manufactured, regardless of the omission to state or the affiant to swear that it *was* sold at such place."

In the case of Alexander v. State, 32 S. W. (2d) 204, we held:

"We find in the record but one bill of exceptions, which complains of the reception of the testimony of the officers because of an alleged insufficient affidavit for search warrant. The affidavit contains the positive averment that the residence to be searched was a place where intoxicating liquors was sold in violation of law. Same was signed by two witnesses, and contained a sufficient description of the property. We are constrained to hold that the bill of exceptions reveals no error. We deem the evidence sufficient."

We further observe that in the inception of this affidavit it is stated that such premises *is* a place where alcoholic beverages *are* being possessed, etc.

The probable cause set forth in such affidavits is for the purpose of convincing the magistrate of the reasonableness relative to the issuance of a search warrant, and we are convinced that there could have been no doubt in any reasonable person's mind but that the affiants intended to say and did say that there were at such time certain violations of the law taking place at appellant's home, and that they had been reliably informed that such were taking place. We think the affidavit was sufficient upon which to predicate the issuance of a search warrant for this private residence.

It is further contended that there is nothing in the record to show that the large amount of alcoholic beverages found in the residence of appellant was his property, or that he was the possessor of such liquors. It is true that appellant was not present at the time of the officers' search, and that his wife gave them the key to the basement where these liquors were found, but it is also shown that this was appellant's residence as known to the officers, his telephone, that he rented the same, paid the rent and lived there. True, it is shown that his mother, an old lady, sometimes lived with him, as well as a sister, and sometimes a brother, but it was appellant's home, his residence, according to his landlady, and he was in charge of the

premises. Mrs. Kilfoyle, the appellant's landlady, testified upon the trial in part as follows:

"I am Mrs. J. M. Kilfoyle. I know Paul Peters. He has been in my house three or four years; don't know just exactly how long. I live in the garage apartment right back of Paul's house. Paul Peters was living there at 724 South Kennedy, in my house, on the 27th of April, 1940. I rent the house to him. I don't know when he first rented it from me. He can tell you and you know time flies so fast, I don't know. He has been there at least three or four years, I think. I know positively he has been there that long. Paul Peters approached me to rent the house and he has paid me the rent during this time. Latife, his sister, is not married.

"Q. Who is living in the house now? A. Paul, his wife and I reckon his mother lives there most of the time; and his sister stays there part of the time. She did live there until she went to Mrs. Haddad's to live, stays at night over there, but I think comes to Paul's house during the day. Paul has lived there continuously since he rented from me several years ago. His brother does not live there now, moved last week or the week before. He is now married."

Under these facts we are impressed that the record shows that Paul Peters was the person in charge of these premises, that it was his residence, and that they are sufficient to show that this large amount of alcoholic beverages were possessed by him for the purpose of sale.

Perceiving no error in the record, the judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant has filed a motion for rehearing supported by an able oral presentation, in which he insists that we were in error in holding the evidence sufficient to support the conviction. He contends that, the evidence showing that he was not at home at the time of the search, and the finding of the large quantity of liquors in the cellar, together with the fact that others were shown to be occupants of the house and were present at the time of the search, such an outstanding hypothesis was raised as to require proof that the others so situated did not have possession of the house, cellar and liquors. In connection with this contention, he calls attention to the lack of evi-

dence showing when he was last seen at his home or his whereabouts at the time of the search.

As supporting his contention, he cited: Matis v. State, 272 S. W. 204, 100 Tex. Cr. R. 509; French v. State, 132 S. W. (2d) 407, 137 Tex. Cr. R. 500; Wooldridge v. State, 51 S. W. (2d) 727, 121 Tex. Cr. R. 255; King v. State, 234 S. W. 1107, 90 Tex. Cr. R. 289; Shelby v. State, 69 S. W. (2d) 82, 125 Tex. Cr. R. 582; Curry v. State, 278 S. W. 855, 102 Tex. Cr. R. 572; Belson v. State, 280 S. W. 209, 103 Tex. Cr. R. 106.

These authorities support the rule that, in cases of this character, where the evidence shows an opportunity or equal opportunity of another or others to possess the liquors charged to have been possessed by the accused, the State's case, to be sufficient to convict upon circumstantial evidence, must disprove such outstanding hypothesis. Such rule is complied with, however, when the facts show that such other person or persons exercised no control over, or possession of, the liquors, and had no opportunity to do so. Stewart v. State, 74 S. W. (2d) 1003, 127 Tex. Cr. R. 147; McCarty v. State, 57 S. W. (2d) 114, 123 Tex. Cr. R. 34.

In the Stewart case, supra, the accused was the operator of a tourist camp, consisting of cabins occupied by himself as well as tourists generally. A quantity of whisky was found near the camp and about thirty or forty yards from the cabin occupied by the appellant. A trail led from this cabin to a beer garden, as also to the place where the whisky was found. Although other cabins in the camp were occupied by different persons, there was no trail leading from such cabins to where the whisky was found. In holding such facts sufficient, we said:

"There is nothing in the record to suggest ownership or possession of the whisky in any of the transient people occupying any of the cabins, if such there were at the time."

To properly appraise appellant's contention in the light of these rules, we have again carefully examined the facts. Appellant was not at home when the search was made. There is an absence of any evidence as to his exact whereabouts, when he left home, or how long he had been gone. His wife was present, and to whom the officers delivered a copy of the search warrant; and, before beginning the search, the officers waited for her to get in touch with the appellant. The wife produced

the key with which the cellar was unlocked, where the liquors were found. There is no proof that the residence or living quarters of the house was searched, or who, if anyone, was in the house at the time. There is no evidence as to where the appellant was when his wife got in touch with him while the officers waited to make the search; nor does the proof negative the fact that the key with which the cellar was unlocked was obtained from or furnished by the appellant.

As to the other occupants of the house (the mother and brother), there is an absence of any affirmative proof that they exercised any right of control over the house or the cellar.

Under these facts, we are unable to reach the conclusion that such other occupants of the house had access to the cellar or had the opportunity of having placed therein the large quantity of liquors found therein.

It is unlikely that anyone else would have or could have stored the amount of liquors as here involved in the cellar of appellant's house, without his knowledge and acquiescence.

Believing the facts sufficient to support the conviction, the appellant's motion for rehearing is overruled.